630 So.2d 1324 (1993)
Phillip HACKETT,
v.
Walter A. SCHMIDT Sr., and State Farm Insurance Company.
No. 93-CA-1268.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1993.
*1325 Raul R. Bencomo, Todd A. Hebert, Bencomo and Associates, New Orleans, for plaintiffs, appellants.
James F. Ryan, Donovan & Lawler, Metairie, for defendant, appellee Mrs. Walter Schmidt.
E. Kelleher Simon, Kathleen E. Simon, Simon & Rees, Metairie, for defendant, appellee Allstate Ins. Co.
Before PLOTKIN, WALTZER and LANDRIEU, JJ.
PLOTKIN, Judge.
Plaintiffs Phillip and Jan Hackett, individually and on behalf of their minor daughter, Phillipa Hackett ("the Hacketts"), appeal a trial court judgment granting motions for summary judgment in favor of defendants Mrs. Walter A. Schmidt Sr. and Allstate Insurance Company (Allstate). We affirm the granting of both motions for summary judgment.

Facts
The Hacketts filed suit against Walter A. Schmidt Sr., his wife, and his homeowner insurer, Allstate, based on Mr. Schmidt's alleged sexual molestation of their minor *1326 daughter, Phillipa. Mr. Schmidt is married to Mrs. Hackett's aunt. In response, both Mrs. Schmidt and Allstate filed motions for summary judgment, which were granted by the trial judge. The Hacketts appeal.

Standard for reviewing trial court's grant of motion for summary judgment
When reviewing a trial court decision granting a motion for summary judgment, appellate courts consider the evidence de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342, 345 (La.1991). Thus, the appellate court must make an independent determination of whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law." La.C.C.P. art. 966(B).
Therefore, a trial court judgment granting a motion for summary judgment must be reversed unless the reviewing court finds that the mover proved both of the following elements: (1) that no genuine issues of material fact exist, and (2) that the mover is entitled to judgment as a matter of law. Chaisson v. Domingue, 372 So.2d 1225, 1227 (La.1979); Transworld Drilling v. Texas General Petroleum Co., 524 So.2d 215, 217 (La.App. 4th Cir.1988). A "fact" is considered material "if its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery." Doe v. Smith, 573 So.2d 238, 241 (La. App. 1st Cir.1990). Thus, a fact is material if it potentially insures or precludes recovery, if it potentially affects a litigant's ultimate success, or if it potentially determines the outcome of the legal dispute. Id.
In reviewing a motion for summary judgment, all evidence and inferences drawn from the evidence must be construed in the light most favorable to the party opposing the motionin this case, the plaintiffs. Schroeder, 591 So.2d at 345. Additionally, all allegations of the party opposing the motion must be taken as true and all doubt must be resolved in his favor. Id.

Summary judgment in favor of Mrs. Schmidt
The Hacketts claim that the trial court erred in granting summary judgment in favor of Mrs. Schmidt, arguing that the court should have found that Mrs. Schmidt owed them and their daughter "a separate and independent duty" to do the following things: (1) to warn them about her husband's propensity for sexual misconduct with minors and (2) to supervise and protect the child from the sexual molestation when the child was in her care and custody.[1] Further, the Hacketts claim that the motion for summary judgment should have been denied because of the existence of "numerous material issues of facts ... concerning Mrs. Schmidt's own actions and/or inactions at the time of young Phillipa's abuse."
Although the "numerous material issues of fact" are not listed, a review of the briefs in this case does reveal disagreement between the parties on two major factual issues. First, the plaintiffs indicate in brief that during the period that Phillipa was abused by Mr. Schmidt,[2] she was often left in Mrs. *1327 Schmidt's care and custody; Mrs. Schmidt claims that Phillipa was never left in her care and custody and that either Phillipa's mother or her grandmother was present every time Phillipa was in her home during the period in question. The second factual issue centers around whether Mrs. Hackett herself had knowledge of Mr. Schmidt's propensity for sexual misconduct with minor females. Mrs. Schmidt claims that Mrs. Hackett had such knowledge because she herself was sexually molested by Mr. Schmidt when she was a youngster; the Hacketts claim in brief that Mrs. Hackett had no memory of Mr. Schmidt's sexual abuse because she had repressed her memory of the incidents until she became suspicious that he had also abused Phillipa.
However, Mrs. Hackett's deposition belies the Hacketts' representations in brief on both of these issues. In her deposition, Mrs. Hackett stated that Phillipa had been left at Mrs. Schmidt's house overnight only once in her life, while she was still "in diapers." Certainly the Hacketts do not claim that Mr. Schmidt molested Phillipa at that time. Otherwise, under the facts as explained by Mrs. Hackett in her deposition, Phillipa was never left at Mrs. Schmidt's home or in Mrs. Schmidt's care. Phillipa was present in the Schmidt home, Mrs. Hackett said, only when she went there either with Mrs. Hackett or with Mrs. Hackett's mother, perhaps once a month. Further, Mrs. Hackett stated, Phillipa's brother, Ian, was also usually present when Phillipa went to the Schmidt home.
Concerning her own knowledge of Mr. Schmidt's propensity for sexual improprieties with minor females, Mrs. Hackett testified extensively in her deposition concerning Mr. Schmidt's activities with her and her cousin when they were children. She claimed that Mr. Schmidt had sexually molested both her and her cousin frequently when they were children, roughly between the ages of 5 or 6 and 12 or 13. Nowhere in her deposition does Mrs. Hackett indicate that she repressed those memories; in fact, her deposition indicates that she had a clear memory of the activities at all times. For example, Mrs. Hackett stated that she told her husband right after Phillipa was born that Phillipa would never spend the night in the Schmidt home because Mr. Schmidt was "strange." However, she stated in deposition that her real reason for saying that, which she did not reveal to her husband, was the fact that she had been abused by Mr. Schmidt when she was a child. This deposition establishes conclusively that Mrs. Hackett herself had knowledge of Mr. Schmidt's propensities for sexual misconduct with minor females all of Phillipa's life.
Thus, we find no genuine issues of material fact which would require this court to reverse the trial court's granting of the motion for summary judgment in favor of Mrs. Schmidt. However, our inquiry cannot stop there; we must now consider the second issuethat is, whether Mrs. Schmidt was entitled to judgment as a matter of law.
Because the Hacketts' suit against Mrs. Schmidt is based on her alleged negligence, in order to recover the Hacketts would be required to show the following: (1) that Mrs. Schmidt owed them a duty, (2) that the duty was breached, (3) that the breach was a substantial factor in causing the injuries suffered by the plaintiffs, and (4) that the risk and harm encountered by the plaintiff were in the scope of the protection afforded by the duty breached. White v. Orleans Parish Criminal Sheriff's Office, 576 So.2d 639, 641 (La.App. 4th Cir.1991). Thus, in order to defeat the motion for summary judgment, the Hacketts must first show that Mrs. Schmidt owed a duty which she breached which would have prevented the alleged injuries to themselves and their minor daughter.
First, the Hacketts claim that Mrs. Schmidt owed a duty to warn them and their daughter about Mr. Schmidt's dangerous propensities. Much of their brief on this issue is devoted to proof that Mrs. Schmidt was indeed aware of her husband's propensities, a fact which Mrs. Schmidt does not deny. The record indicates that Mrs. Schmidt first became aware of her husband's *1328 propensity for sexual misconduct with minor females in 1970, when a neighbor told her mother that Mr. Schmidt had tried to indecently expose himself to her eight- and twelve-year-old daughters. At that time, both Mr. and Mrs. Schmidt sought counseling for the problem. However, according to Mrs. Schmidt's deposition testimony, she had no reason to believe that the problem had not been resolved since there had been no further incidents between 1970 and 1985, when the allegations concerning Phillipa surfaced. Both Mrs. Schmidt and Dr. Jensen, Mr. Schmidt's counselor, testified that Mr. Schmidt made great progress in therapy. Additionally, no further allegations of sexual misconduct with minors surfaced during that period.
Moreover, the record reveals clearly that Mrs. Hackett did have knowledge of Mr. Schmidt's propensities to molest minor females, since he allegedly molested her and her cousin for years during their youths. Certainly, then, Mrs. Hackett was in as good a position to know of the danger faced by her daughter in the presence of Mr. Schmidt as was Mrs. Schmidt. The Hacketts cite no authority for imposing a duty to warn a second party of facts which the second party knows, and we have been unable to find any such authority. Therefore, we find that Mrs. Schmidt had no duty to warn the Hacketts of Mr. Schmidt's propensities for sexual misconduct with minor females.[3]
Second, the Hacketts claim that Mrs. Schmidt owed a duty to protect Phillipa when she was present in her home. The law in Louisiana is clear that no duty to protect against or control the actions of a third party exists unless the defendant has a "special relationship" with the victim. Enterprise Transportation Co. v. Veals, 532 So.2d 917, 921 (La.App. 5th Cir.1988). The Hacketts attempt to give rise to a "special relationship" by arguing in their brief that the duty arose because Mrs. Schmidt was entrusted with the care and custody of Phillipa on numerous occasions, when she allowed Phillipa to be alone with Mr. Schmidt, despite her knowledge of his dangerous propensities. However, as discussed above, Mrs. Hackett's deposition belies any assertion that Mrs. Schmidt was ever actually entrusted with Phillipa's care; Mrs. Hackett herself said that Phillipa visited the Schmidt home only in the company of her mother or her grandmother, who were therefore entrusted with her care and custody at those times. In fact, on September 28, 1985, when the act of alleged sexual abuse occurred, Phillipa's mother, father, grandmother, and numerous other relatives were present at the Schmidt home.
In oral argument, the Hacketts advanced an additional theory for imposing a duty to warn or protect on Mrs. Schmidt, when they argued that this situation is analogous to a "premises liability" case. The Hacketts argued that Mrs. Schmidt should be liable for failing to warn about or prevent *1329 the abuse in the same way that she would liable for failing to warn about or prevent an injury caused by the existence of a hole in the floor of her home or the presence of a dog on the premises. However, this situation cannot be likened to a premises liability situation, where the owners of the property may be strictly liable for injuries caused by defects in their property. Mr. Schmidt is not Mrs. Schmidt's property. As the Hacketts concede, Mrs. Schmidt cannot be held responsible for Mr. Schmidt's negligent or intentional acts. Neither can she be held responsible for failing to warn about or protect from his activities in a situation where she has no special relationship to the victim. The Hacketts cannot transfer responsibility for Phillipa's care and custody to Mrs. Schmidt merely because Phillipa was present in her home on occasion. Thus, we find that Mrs. Schmidt had no duty to protect Phillipa from Mr. Schmidt's improper sexual advances.
Accordingly, Mrs. Schmidt carried her burden of proving both that no genuine issues of material fact existed and that she is entitled to judgment as a matter of law since she did not owe any duty to the plaintiffs under the circumstances of this case. Thus, the trial court judgment granting the motion for summary judgment in favor of Mrs. Schmidt is affirmed.
Summary judgment in favor of Allstate
In contesting the granting of the motion for summary judgment on behalf of Allstate, the Hacketts do not argue that any genuine issues of material fact exist, which would preclude summary judgment in Allstate's favor. Instead their arguments are based on the second prong of the test for determining whether the granting of a motion for summary judgment is appropriate that is, whether Allstate was not entitled to judgment as a matter of law.
The trial court granted the motion for summary judgment on behalf of Allstate on the basis of the following exclusion in the homeowner's insurance policy issued to Mr. Schmidt:
ExclusionsLosses we do not cover
1. We do not cover bodily injury or property damage intentionally caused by an insured person.
The Hacketts claim that the trial court erred legally in granting the motion for summary judgment on the basis of the above exclusion because Allstate failed to prove that the damage suffered by Phillipa and her parents was intended by Mr. Schmidt when he committed the sexual molestation. They admit that the act of sexual molestation was an intentional act, but claim that fact is not dispositive of the true issue in the casethat is, whether the damage was intentional. Coverage is excluded under the above language only if the bodily injury or property damage was intentional, not simply because the act was intentional, the Hacketts claim.
Generally, an insurer bears the burden of proving that an intentional injury exclusion applies to a given factual situation. Yount v. Maisano, 627 So.2d 148, 151-152 (La.1993). The purpose of such an exclusion is to "prevent an insured from acting wrongfully with the security of knowing that his insurance company will `pay the piper' for the damages." Id. Like the exclusion in the policy at issue in this case, intentional injury exclusions do not exclude coverage for all injuries resulting from an intentional act, but only for those injuries which the insured intended. Id. The exclusion was explained in the Yount case as follows:
The subjective intent of the insured, as well as his reasonable expectations as to the scope of his insurance coverage, will determine whether an act is intentional. An act is intended if the perpetrator desires the results of his action or he believes that the results are substantially certain to occur.
Id. at 152. See also Great American Insurance Co. v. Gaspard, 608 So.2d 981, 985 (La.1992); Breland v. Schilling, 550 So.2d 609 (La.1989).
This court considered a very similar issue in Shaw v. Bourn, 615 So.2d 466 (La.App. 4th Cir.1993). In that case, the court held that insurance coverage in this type of case is inappropriate because the "cost of damage caused by sexual molestation is not a burden that society as a whole should bear. It is an *1330 intentional act and it is a burden to be laid squarely upon the shoulders of the molester." Id. at 471.
However, as the Hacketts point out, the exclusionary clause in this case is different from the exclusionary clause considered in Shaw in that the clause considered in Shaw excluded coverage for actions "an insured could reasonably expect would cause harm." The Shaw court noted that the use of the words "reasonably" and "an" in that policy indicated that the determination of whether the exclusion applied was not a subjective fact call dependent on the circumstances and knowledge of the particular defendant/insured party, but rather a reasonable man standard. Id. at 471. After concluding that "any, indeed, every reasonable man expects children to be harmed by molestation," the court applied the policy to reverse the trial court's denial of the insurer's motion for summary judgment. Id. See also Doe v. Smith, 573 So.2d 238 (La.App. 1st Cir.1990).
The policy language in the instant case, however, does not apply a reasonable man standard, but instead excludes coverage only when the insured party intends the bodily injury or property damage suffered by the injured party. Thus, a reasonable man standard may not be used to interpret this policy; a subjective standard must be applied. When an insured's subjective intent must be determined, the court should consider "all the facts and circumstances bearing on such intent or expectation." Yount, 627 So.2d at 152. Since those determinations of subjective intent are factual, the trier of fact is given much discretion in determining intent. Id.
The record in this case demonstrates that Mr. Schmidt, like the reasonable man discussed in the Shaw case, expected "children to be harmed by molestation." This is demonstrated by statements made in a deposition by Dr. Millard Jansen, Mr. Schmidt's psychologist. In the deposition, Dr. Jansen stated unequivocally that the consequences of sexual abuse, including the negative effects on the victims, was discussed extensively during Mr. Schmidt's therapy. Since Mr. Schmidt committed an intentional act, and since he was aware of the injury which would occur to his victim when he committed that act, we find that Mr. Schmidt unquestionably intended the injuries which the plaintiffs claim to have suffered. The trial court did not abuse his discretion in determining that Mr. Schmidt knew that the injuries to Phillipa and her parents were "substantially certain to occur."
Thus, we find that Allstate carried its burden of proving that the exclusion applies to Mr. Schmidt's conduct and that it is entitled to judgment as a matter of law. Accordingly, the trial court judgment granting the motion for summary judgment on behalf of Allstate is affirmed.

Conclusion
For the foregoing reasons, the trial court judgment granting the motions for summary judgment in favor of Mrs. Schmidt and Allstate are affirmed.
AFFIRMED.
NOTES
[1] In the assignments of error listed in both their original and their supplemental briefs, the Hacketts list only the two duties specified as applying to Mrs. Schmidt. However, in the body of their briefs, they attempt to refute Mrs. Schmidt's assertion that they claim the existence of only two duties, saying their petition lists at least ten separate allegations of negligence on the part of Mrs. Schmidt. However, they fail to specify which, if any, of the allegations in the petition refer to any duties other than a duty to warn and/or a duty to protect. We agree with Mrs. Schmidt that the duties which the Hacketts attempt to delineate in their petition all fall in one or the other of those two categories.

Further, the Hacketts admit that they are not seeking to impute any liability on the part of Mr. Schmidt to Mrs. Schmidt, insisting that their cause of action against Mrs. Schmidt is based on the breach of her "separate and independent" duties owed to them and their daughter.
[2] The record is unclear concerning both the duration and frequency of the alleged sexual abuse. In brief, the Hacketts claim that the sexual abuse started when Phillipa was five years old and continued until they discovered the abuse when Phillipa was twelve, implying that the abuse was frequent and on-going for a seven-year period. However, Mrs. Hackett's deposition, which was submitted by Mrs. Schmidt in support of the motion for summary judgment, indicates that the Hacketts were aware of only one alleged incident of abuse, which allegedly occurred on September 28, 1985, when Phillipa was five or six years old.
[3] The Hacketts try to avoid this result by saying that Mrs. Hackett's knowledge cannot be imputed to Phillipa. However, even if Mrs. Schmidt had a separate duty to warn Phillipa of Mr. Schmidt's propensities, the plaintiffs have failed to explain how such knowledge would have prevented the alleged molestation. Phillipa was a very young child when the alleged abuse occurred; it is doubtful that she would have understood a warning from Mrs. Schmidt. Additionally, Phillipa's care and custody is legally entrusted to her parents, who, under the circumstances of this case, were in as good a position to prevent the abuse as was Mrs. Schmidt. If Mrs. Schmidt had a duty to warn Phillipa, Mrs. Hackett had an even greater duty; Mrs. Hackett stated in her deposition that she specifically avoided telling Phillipa anything specific about Mr. Schmidt. Although a duty to warn the parents, if they were unaware of the problem, might reasonably be imposed in a situation where a spouse unquestionably knows that the other spouse is prone to sexually molest children, a duty to warn a five-year old child, especially when at least one of her parents was aware of the problem, cannot be reasonably imposed.

The Hacketts also claim that the fact that Mrs. Hackett was aware of Mr. Schmidt's propensities is irrelevant because any alleged contributory negligence or other legal fault on Mrs. Hackett's part does not affect Phillipa's independent cause of action against Mr. Schmidt. However, that statement indicates that the Hacketts misunderstand Mrs. Schmidt's argument. She claims, correctly, that Mrs. Hackett's knowledge relieves her of any duty to warn either Phillipa or her parents; she does not seek to use Mrs. Hackett's knowledge as a basis for contributory negligence. Unless Mrs. Schmidt owes some kind of duty, she cannot be liable for negligence of any kind. Thus, contributory negligence is not even an issue.