658 So.2d 1304 (1995)
Emily Michelle BELSOM
v.
Steven BRAVO and ABC Insurance Company.
No. 94-CA-876.
Court of Appeal of Louisiana, Fifth Circuit.
April 25, 1995.
Writ Denied September 1, 1995.
Terrence C. Forstall, Robert P. Kemp, Courtenay, Forstall, Guilbault, Hunter & Fontana, New Orleans, for plaintiff-appellant.
W. Marvin Hall, Hailey, McNamara, Hall, Larmann & Papale, Metairie, for defendant-appellee.
Before BOWES, GRISBAUM and GOTHARD, JJ.
*1305 GRISBAUM, Judge.
Plaintiff-appellant appeals the granting of State Farm Fire & Casualty Company's (State Farm) motion for summary judgment, which was granted on the basis defendant-appellee's homeowner's insurance policy, provided by State Farm, did not provide coverage for intentional harm and, therefore, did not cover appellee's acts of sexual assault against appellant. We affirm.

ISSUES
In order to determine whether the trial court erred in granting the motion for summary judgment, we must necessarily address two specific questions:
(1) Whether, in a civil suit for damages for sexual assault against a defendant's homeowner's insurance policy, the standard for determining "intent" for purposes of excluding coverage under an intentional harm exclusion is subjective or inferred, and
(2) If inferred, whether the resulting harm is also considered intentional as a matter of law.

FACTS
Seventeen-year-old Emily Belsom, plaintiff-appellant, had just finished a school exam earlier in the day on October 17, 1991 and spent the rest of the day celebrating with her friends. Later that night, around ten or eleven o'clock, she and her cousin, Michael Monahan, and her friend, Mike Moran, went to Friar Tuck's, a local bar, where Emily met up with a bunch of her school friends. At the bar, Emily saw defendant-appellee, Steven Bravo, with whom she was acquainted because he had dated two of her friends. Throughout the night, she had occasion to speak with Steven, who was steadily drinking and appeared drunk. As Emily and her two companions were leaving Friar Tuck's around midnight, she talked to Steven again who asked if he and his two friends could come over. Emily did not answer and she left the bar.
Emily was dropped off at her home on Beverly Garden Drive. Her parents were out of town for the week, and Emily's brother's friend, Billy Lahners, was staying at the house. However, Billy was not home at the time Emily was dropped off. Shortly after Emily arrived home, Steven called and asked if he and his two friends could come over. Emily said yes and the three came over. They proceeded to sit on the couch and watch television, and, after about 30-45 minutes, Emily asked them to leave, which they did.
Three minutes later, Steven knocked on the door and asked to use the telephone. Emily let Steven in, and they ended up talking on the couch because Steven claimed he needed to talk. Steven tried to kiss Emily, but she pushed him away. Emily offered to bring Steven home, but when she went to grab her purse, Steven grabbed Emily and the next thing she knew she was "on the ground facing up." He then picked her up and carried her to her parent's bedroom where he undressed her and made her give him oral sex. After the incident, Steven insisted they sleep in the bed. In the morning, Steven tried to get Emily to manually masturbate him with her hand but she managed to get out of it. She then drove him home.
On October 14, 1992, Emily filed a civil suit against Steven and his parents' homeowner's insurance company, State Farm, for damages caused by the sexual assault. State Farm filed a motion for summary judgment on February 22, 1994 claiming the insurance policy excludes bodily injury which is intentionally caused by an insured. A hearing on the motion was held July 8, 1994, and the trial court rendered judgment on July 13, 1994, granting State Farm's motion for summary judgment. Appellant appeals this judgment on the basis there is a material issue of fact as to whether appellee, Steven, intended to harm appellant or even whether he had the requisite mental capacity to form such intent.

STANDARD OF REVIEW
In reviewing the granting of a motion for summary judgment, we must consider the *1306 evidence de novo using the same criteria required by trial courts by La.Code Civ.P. art. 966, which requires there be no genuine issue of material fact and the mover be entitled to judgment as a matter of law.
Moreover, a summary judgment is usually inappropriate where a subjective fact, such as intent, is involved. Toups v. Hawkins, 518 So.2d 1077 (La.App. 5th Cir.1987).

ISSUES ONE AND TWO

Law and Analysis
Typically, intentional injury exclusions do not exclude coverage for all injuries resulting from an intentional act but, rather, only for those injuries which the insured intended. Therefore, the subjective intent of the insured is usually the test for determining whether an act is intentional. An act is considered intentional if the insured desired the results of his action or believed certain results were substantially certain to occur. Yount v. Maisano, 627 So.2d 148 (La.1993).
Here, appellee's homeowner's insurance policy states personal liability coverage and medical payments coverage do not apply as follows: "1. Coverage L and Coverage M do not apply to: a. bodily injury or property damage: (1) which is either expected or intended by an insured; or (2) to any person or property which is the result of willful and malicious acts of an insured...." (Emphasis as found in the original.) The preliminary question before us is whether "intent" in the realm of this exclusionary provision refers to the subjective intent of the insured or whether there is a legal inference of intent.
We see that our brothers of the First Circuit, in Doe v. Smith, 573 So.2d 238 (La. App. 1st Cir.1990), writ denied, 573 So.2d 1139 (La.1991), a case involving child molestation, found "child molestation is one such rare instance where a factual determination of negligence or intentional conduct is inappropriate as a practical matter. These types of acts cannot result from careless conduct and only occur as a result of a deliberate act by the perpetrator." Id. at 243 (emphasis as found in the original). Thereafter, our brothers of the Fourth Circuit, in Shaw v. Bourn, 615 So.2d 466 (La.App. 4th Cir.1993), writ denied, 618 So.2d 409, 412 (La.1993), adopted this rationale. Thus, Louisiana jurisprudence recognizes as a matter of law that the act of child molestation is of itself a deliberate and intentional act. This principle of inferred intent was extended somewhat in a sexual molestation case involving a 29-year-old mentally handicapped female who had the mental age of a six-year-old. See Doe v. State, Dept. of Health & Human Resources, 623 So.2d 72 (La.App. 1st Cir. 1993), writ denied, 627 So.2d 653 (La.1993).
Now, we are faced with the question of whether we can extend the legal inference of intent (in child molestation cases) to a sexual assault matter involving young adults, ages 17 and 18. Sexual assault is a crime regardless of whether the victim is a child or an adult. An adult is no less likely than a child to suffer serious physical, emotional and psychological harm as a result of a sexual assault. Furthermore, we agree with the reasoning of the Minnesota Court of Appeals which stated "in inferring an intent to injure from an intentional act, the age or vulnerability of the person assaulted is not the determinative factor. It is the character of the nonconsensual sexual act that results in the mandatory inference." Rulli v. State Farm Fire & Casualty Co., 479 N.W.2d 87, 89 (Minn.Ct.App.1992). Therefore, we hold the principle of inferred intent is not limited to acts of child molestation but necessarily extends to act of sexual assault regardless of age.
Our inquiry cannot stop here. So far, we have only established that sexual assault is an intentional act. A review of Louisiana jurisprudence indicates slight confusion as to whether this inferred intent also applies to determining the intent to cause the harm or whether a subjective test or a reasonable man standard applies.
We see that, in Doe v. Smith, supra, after finding acts of child molestation were intentional acts, the First Circuit continued its *1307 analysis to determine whether the resulting harm was expected or intended as a result of the intentional deliberate act. The court applied an objective reasonable man standard in asking whether a reasonable person would expect certain harm as a result of the intentional acts of molestation. The reasonable man standard was applied because the language of the policy stated "[w]e do not cover any bodily injury ... which may reasonably be expected to result from the intentional ... acts of an insured person...." Doe v. Smith, at 241 (emphasis added; underscoring omitted).
We see also that, in Shaw v. Bourn, supra, the Fourth Circuit applied a reasonable man standard in determining whether the harm inflicted by the intentional act of child molestation was intended or expected. The exclusionary provision provided coverage would not be afforded for bodily injury which resulted from an act that "an insured could reasonably expect would cause harm." Id. at 468 (emphasis added; bold print as found in the original). The court carefully distinguished between "an insured" and "the insured" as referred to in the exclusionary language of the homeowner's insurance contract. The court found the use of the words "reasonably" and "an" instead of the word "the" indicated the policy did not look to the subjective intent of the particular insured but rather dictated a reasonable man standard. The court went on to say every reasonable man expects a child to be harmed by molestation.
Thereafter, in a later case, Hackett v. Schmidt, 630 So.2d 1324 (La.App. 4th Cir. 1993), the Fourth Circuit found the subjective intent standard applied in determining whether the acts of the insured were intended to cause harm. In explaining why the subjective standard was to be used instead of the reasonable man standard, which it earlier used in Shaw and which the First Circuit used in Doe v. Smith, the court noted the difference in the exclusionary clause. In Hackett v. Schmidt, the exclusionary clause merely provided, "[w]e do not cover bodily injury ... intentionally caused by an insured person." Id. at 1329 (emphasis as found in the original). The court reasoned the lack of the phrase that the acts of the insured "`could reasonably expect would cause harm,'" prevented the application of the reasonable man standard. Id. at 1330 (quoting Shaw, supra at 471). Applying the subjective standard, the court found the trier of fact is given much discretion in determining intent from all the facts and circumstances bearing on such intent or expectation. The court ultimately affirmed a finding of intent.
However, in Doe v. State, supra, decided before Hackett, the First Circuit was faced with a similar exclusionary clause to the one in Hackett and identical to the one before us. The court applied the reasonable man standard in determining the intent of the actor of the intentional act to cause the harm. The Doe v. State court, citing Doe v. Smith, stated that "[t]he criteria for determining whether bodily injury was expected of intended by the insured is not merely whether an intentional act has occurred, but also includes an inquiry as to what consequences an objective reasonable person might expect or intend as the result of a deliberate act." Doe v. State, supra at 73.
A review of federal jurisprudence indicates once the inferred intent rule is applied due to the nature and character of the act, then the actor's subjective intent to harm or capacity to form such intent becomes irrelevant. Wiley v. State Farm Fire & Casualty, Co., 995 F.2d 457 (3d Cir.1993). We agree. In Breland v. Schilling, 550 So.2d 609, 610 (La. 1989) (citations omitted), the Louisiana Supreme Court stated that
The purpose of an intentional injury exclusion is to restrict liability insurance coverage by denying coverage to an insured in circumstances where the insured acts deliberately and intends or expects bodily injury to another. The exclusion is "designed to prevent an insured from acting wrongfully with the security of knowing that his insurance company will `pay the piper' for the damages."
Furthermore, the court in Shaw v. Bourn, supra, at 471, reasoned *1308 our ruling does not mean that the plaintiffs will not be able to recover against Bourn personally. This is a case about personal responsibility. Mr. Bourn is personally responsible for his acts of molestation and he is personally liable for them. The general theory of insurance is that certain losses are diffused among all members of society and this makes sense especially in case of losses due to floods, hurricanes, earthquakes, and other natural disasters. But the cost of damage caused by sexual molestation is not a burden that society as a whole should bear. It is an intentional act and it is a burden to be laid squarely upon the shoulders of the molester....
We cannot find any rationale against applying the inferred intent rule in a sexual assault case, regardless of the age of the persons involved, equally across the two-prong requirement in an exclusionary clause, which requires a showing of (1) an intentional act and (2) the insured intended to cause the harm. In fact, we find it to be consistent with our Louisiana jurisprudence.
We hold the inferred intent rule to be applicable in sexual assault cases, regardless of age. By this we mean that not only is the act of sexual assault intentional as a matter of law, but the resulting harm is also considered intentional as a matter of law.
As a result, we cannot say the trial court erred in granting State Farm's motion for summary judgment. Appellant's argument that a material fact exists as to appellee's intent must fail in light of the above discussion. We find there is no material issue of fact, and State Farm is entitled to summary judgment as a matter of law.
For the reasons assigned, the trial court's judgment is hereby affirmed. All costs of this appeal are to be assessed against the appellant.
AFFIRMED.
BOWES, J., concurs.
GOTHARD, J., concurs in the result only.
BOWES, Judge, concurs.
I concur in the result reached by my learned colleague, Judge Grisbaum, the writer of the opinion, affirming the granting of summary judgment by the trial court but I depart from and cannot subscribe to most of his reasoning. I would not extend the "inferred intent" rule to cases involving sexual assault of adult persons. Without engaging in a protracted analysis here, I believe it is self-evident that sexual interaction between adults and children is of such a nature as to require that the intent to harm the child may and should be inferred.
Most of the time, an adult who is sexually assaulted is likely to suffer serious physical, emotional, and psychological harm, as the writer states. However, I do not believe that the necessary finding of "intent" on the part of the tortfeasor in these situations may be so readily inferred as with children because in the case of child molestation, an adult may not utilize the defense of consent, as a child is deemed unable to "consent" to such actions.
However, in circumstances involving adults, the determinative factor which distinguishes a sexual act from a sexual assault is usually the question of consent. Consent is a defense in adult cases and the finding of consent is a factual matter to be determined by the trier of fact. "Consent" and "intent" are inextricably linked issues in situations involving adult victims; in order to infer intent, it is necessary, in my opinion, to be able also to infer the (lack of) consent. This is obvious in the case of a child victim; however, it is much less obvious in cases such as the one before us. Therefore, I am loathe to extend the finding of "inferred intent" to civil sexual assault cases which do not involve children.
However, I affirm the ultimate affirmation of the motion for judgment based on the record of these proceedings. I agree with Judge Gothard's reasoning in his concurring opinion that the acts of the defendant were clearly willful and malicious and are, *1309 therefore, excluded by the terms of the policy in question.
GOTHARD, Judge, concurs in the result only.
I concur in the result only. I disagree insofar as the majority opinion extends inferred intent to cases other than sexual abuse/molestation of children. As the majority properly notes, recent Louisiana jurisprudence has found the act of child sexual abuse/molestation to be so egregious as to automatically toll the inferred intent rule for purposes of precluding coverage under the perpetrator's homeowner's insurance policy. However, the matter before us does not involve the sexual abuse/molestation of a child.
In limiting its prior holding in Wiley v. State Farm Fire & Casualty Co., 995 F.2d 457 (3rd Cir.1993) (on which the majority relies) to only cases of child sexual abuse, the Federal Third Circuit held that "[i]nferring intent to harm is strong medicine. We noted in Wiley that it has `narrow applicability.'" Aetna Life and Casualty Co. v. Barthelemy, 33 F.3d 189, 192 (3rd Cir.1994). I thoroughly agree with this rationale and believe that inferred intent should be strictly limited.
I would still, however, affirm the trial court's granting of defendant's motion for summary judgment, but for reasons other than those stated by the majority. The homeowner's liability policy in question also precludes coverage "(2) to any person or property which is the result of willful and malicious acts of an insured." Clearly, the acts of Steven Bravo were willful and malicious,[1] and I would affirm the trial court's judgment on this basis only.
NOTES
[1] Black's Law Dictionary (5th edition, 1979) defines "malicious" as "[c]haracterized by, or involving, malice; having, or done with, wicked or mischievous intentions or motives; wrongful and done intentionally without just cause or excuse."