714 So.2d 809 (1998)
L.M., Individually and on Behalf of the minor children G.W., J.W., L.J.W., and J.W.
v.
J.P.M. and State Farm Insurance Company.
No. 97-CA-1215.
Court of Appeal of Louisiana, Fifth Circuit.
May 13, 1998.
David L. Colvin, Jeffrey P. Brothers, David L. Colvin & Associates, Gretna, for Appellants/Plaintiffs.
Kathryn T. Wiedorn, Hailey, McNamara, Hall, Larmann & Papale, L.L.P., Metairie, for Appellee/Defendant.
Before DUFRESNE, WICKER and GOTHARD, JJ.
WICKER, Judge.
This appeal arises from a petition for damages filed on behalf of L.M., individually and on behalf of three minor children (plaintiffs/appellants). L.M. filed suit against J.P.M., the minors' stepfather, and an adult. Suit was also filed against J.P.M.'s homeowner's insurer, State Farm Insurance Company[1] (State Farm), defendants/appellees, seeking damages for the alleged sexual abuse/molestation of her minor children. Both parties concede that J.P.M. pled guilty to three counts of molestation and is currently incarcerated.[2] State Farm filed a motion for summary judgment arguing the homeowner's insurance policy issued to J.P.M. and in effect at the time of the alleged incidents excludes coverage for the acts alleged. State Farm contends the acts are excluded on the basis they were expected or intended by the insured, and alternatively, because they were willful and malicious. The trial judge granted *810 the motion for summary judgment. The plaintiffs have appealed. We affirm.
The policy herein contains the following exclusion:
1. Coverage L and Coverage M[3] do not apply to:
A. Bodily injury or property damage:
(1) which is either expected or intended by an insured; or
(2) to any person or property which is the result of willful and malicious acts of an insured[.]
Two issues are presented for our review:
1. Whether this court follows the "inferred intent" rule adopted by the majority of jurisdictions. See, e.g., State Farm Fire and Cas. Co. v. Davis, 612 So.2d 458, 463 (Ala.1993) and the cases cited therein.
2. Whether J.P.M.'s alleged lack of capacity to intend to harm the children or to control deviant sexual urges because of a diagnosis of Pedophillia raises an issue of material fact which precludes the granting of summary judgment.
This court adopts the "inferred intent" rule[4] for the following reasons.
In Weekley v. Jameson, 221 Mich.App. 34, 561 N.W.2d 408 (1997) the court explained the "inferred intent" rule at 410:
For purposes of civil liability insurance, courts should infer the intent to injure as a matter of law when an adult sexually assaults a child. Fire Ins. Exchange v. Diehl, 450 Mich. 678, 689-690, 545 N.W.2d 602 (1996) and cases cited therein; State Mutual Ins. Co. v. Russell, 185 Mich.App. 521, 462 N.W.2d 785 (1990). See also Linebaugh v. Berdish, 144 Mich.App. 750, 762, 376 N.W.2d 400 (1985) and Auto-Owners Ins. Co. v. Gardipey, 173 Mich. App. 711, 714-715, 434 N.W.2d 220 (1988). This inference is not based on contract interpretation, Diehl, supra, p. 689, n. 3, 545 N.W.2d 602, but on public policy:
Generally, [the] courts reason that the inference of the intent to injure should be applied because the act of child molestation is inherently harmful. B.B. v. Continental Ins. Co., 8 F.3d 1288, 1293 (C.A.8, 1993). "The [inferred -intent] approach ... stands for the proposition that a person who sexually manipulates a minor cannot expect his insurer to cover his misconduct and cannot obtain such coverage simply by saying that he did not mean any harm. The courts following the majority approach have concluded that sexual misconduct with a minor is objectively so substantially certain to result in harm to the minor victim, that the perpetrator cannot be allowed to escape society's determination that he or she is expected to know that. Hence, these courts infer the intent to harm as a matter of law in sexual misconduct cases involving minors." Id., quoting Whitt v. DeLeu, 707 F.Supp. 1011, 1016 (W.D.Wis.1989). [Diehl, supra, pp. 689-690, n. 4, 545 N.W.2d 602.]
The exclusion of coverage for public policy reasons was also explained in Nodak Mut. Ins. Co. v. Heim, 1997 N.D. 36, 559 N.W.2d 846 (1997). In Nodak at 851 the Supreme Court of North Dakota stated:

*811 It is well established an insured's sexual molestation of a child is precluded from coverage under public policy and intentionalact exclusions of insurance policies. E.g., J.C. Penney Cas. Ins. Co. v. M.K., 52 Cal.3d 1009, 278 Cal.Rptr. 64, 804 P.2d 689, cert. denied, 502 U.S. 902, 112 S.Ct. 280, 116 L.Ed.2d 232 (1991); Auto-Owners Ins. Co. v. Brubaker, 93 Ohio App.3d 211, 638 N.E.2d 124 (1994); American Family Mut. Ins. Co. v. Purdy, 483 N.W.2d 197 (S.D.), cert. denied, 506 U.S. 870, 113 S.Ct. 202, 121 L.Ed.2d 144 (1992). The essence of a child molestation case is the gratification of sexual desire, and an intent to harm is inferred from the act. J.C. Penney; Brubaker; Purdy.

In Davis, supra the court considered an identical exclusion as the one herein and explained at 463:
The rule applied by an overwhelming majority of courts is that, in cases involving sexual abuse of children, intent to injure is inferred as a matter of law "regardless of claimed intent." Whitt v. DeLeu, 707 F.Supp. 1011, 1016 (W.D.Wis.1989).
In explaining its holding, the Davis court adopted the reasoning of Justice Frank in his dissenting opinion. Zordan v. Page, 500 So.2d 608, 613 (Fla.Dist.Ct.App.1986), review denied, 508 So.2d 15 (Fla.1987) (Frank, J. dissenting) as follows:
I am absolutely unwilling to deny the foreseeability of injury to a child who is subjected to sexual abuse. It defies human response and sensitivity to conclude that the inevitable product of the sexual molestation of a child is not intended. That conduct inescapably inspires some response in the minor victim. Whether the response is a precocious excitation of libido, an utter revulsion or simply confusion, the child suffers grave psychological injury. Indeed, the fact that the ultimate goal of this litigation is to acquire funding to reconstruct Nicole's emotional status is a testament to the soundness of my urging that we not accord slavish adherence to a principle that simply does not fit the context. The damage Nicole suffered flowed just as surely from Page's criminal acts as if he had taken his fist or a club and struck her in the face.
Justice Frank further explained:
The nature of Page's conduct "was such that an intention to inflict injury can be inferred as a matter of law." Fireman's Fund Ins. Co. v. Hill, 314 N.W.2d 834 (Minn.1982). To the extent that the customary rule would bring the Zordans' claim within the policy, I part company with that rule in a matter of this kind and would follow the rule adopted in a number of states exemplified by the Minnesota Supreme Court's view: "In construing the `intentional act' exclusion of liability insurance policies where the underlying claim is that the insured intentionally sexually assaulted the victim, an intention to inflict injury will be inferred as a matter of law." Estate of Lehmann By Lehmann v. Metzger, 355 N.W.2d 425, 426 (Minn.1984).
To claim, as is pleaded by the Zordans, that Page's acts were committed without an intention to harm is incredible. Florida's criminal code protects children from and punishes for the very specie of acts committed by Page, and implicit in the statutory scheme is the recognition that some form of harm inheres in and inevitably flows from the proscribed behavior. See Allstate Ins. Co. v. Kim W., 206 Cal. Rptr. 609, 160 Cal.App.3d 326 (1984)[footnote omitted].
Id. at 613-614.
State Farm argued below that as a matter of law child molestation is an intentional act.[5]
*812 The plaintiffs filed an opposition to the motion and argued that J.P.M. was incapable of intending to harm or perform acts which were willful or malicious because of his mental condition. They filed a motion seeking to compel J.P.M. to submit to a psychological evaluation and made repeated attempts to depose J.P.M. At the date of the hearing no deposition had yet been taken nor had a psychological evaluation been conducted. The plaintiffs attached an affidavit by Dr. Brian T. Jordan, Ph.D., a Clinical Psychologist, in support of their opposition. The affidavit states general findings regarding individuals suffering from sexual disorders involving deviant behavior. Dr. Jordan averred that such disorders may involve a compulsive drive which may override the individual's ability to restrain deviant sexual urges. Dr. Jordan further averred that in the case of Pedophillia there are recurrent deviant sexual urges. Furthermore, he averred that an evaluation would be needed in order to determine whether an individual was able to control such actions.
The trial judge granted the motion for summary judgment based on his interpretation of jurisprudence which held that as a matter of law intent is inferred in cases involving sexual molestation of minor children by an adult for the purpose of finding an exclusion to homeowner's insurance coverage.
Appellants further argue that the trial judge erred in granting summary judgment before the deposition and mental examination had been conducted. They assert that the outstanding discovery could have proved the existence of a material fact regarding J.P.M.'s sanity and his ability to intentionally inflict harm. In their memorandum in opposition to the motion for summary judgment they argued it was obvious that a stepparent who molested his minor children would have questionable sanity.
Appellants rely on this court's opinion in Kaufman v. Corporate Realty, Inc., 94-533 (La.App. 5th Cir. 12/14/94) 648 So.2d 1010 wherein we vacated the granting of a summary judgment because of outstanding discovery which would resolve an issue of material fact. Although Kaufman involved issues of fact as to intent, it did so only in the context of a suit by a creditor against a debtor. That case is inapposite since J.P.M.'s ability to intentionally inflict harm is irrelevant because the intent is inferred. In Belsom at 1307 we explained:
A review of federal jurisprudence indicates once the inferred intent rule is applied due to the nature and character of the act, then the actor's subjective intent to harm or capacity to form such intent becomes irrelevant.
Furthermore, we agree with the holding in Atlantic Employers v. Tots & Toddlers, 239 N.J.Super. 276, 571 A.2d 300 (App.Div.), certif. denied, 122 N.J. 147, 584 A.2d 218 (1990) wherein the court rejected, as a matter of public policy and logic, the argument based *813 on medical testimony that pedophiles do not intend to harm their victims.
Additionally, appellants argue that intent should not be inferred because the proper test for determining whether there was an intentional act to invoke the exclusionary clause is the Louisiana Supreme Court case of Breland v. Schilling, 550 So.2d 609 (La. 1989). Breland has been limited to its facts. Jim Carey Distributing Co., Inc. v. Zinna, 589 So.2d 526 (La.App. 1st Cir.1991). In Zinna the court affirmed the granting of summary judgment by holding inter alia that an insured's action of converting her employer's funds was an intentional act and excluded under the homeowner's policy. The court explained at 528:
Plaintiff urges that Mrs. Zinna's embezzling does not fall into the intentional act exclusion of the policy by alleging her acts were "involuntary" and were done to "support a gambling habit which had become uncontrollable to her." The plaintiff cites Breland v. Schilling, 550 So.2d 609 (La. 1989) as authority for its contention that "A finding of coverage hinges entirely on whether the damages sustained by the plaintiff were subjectively intended or expected by the insured." In Breland, the court found a homeowner's policy which barred coverage for bodily injury did not exclude coverage for plaintiff's injury where defendant hit plaintiff and broke his jaw but testified he had intended to inflict only a minor injury, rather than a severe injury, upon plaintiff. Breland is an unusual case and is limited to its facts. It is not applicable to the case sub judice. Plaintiff also states that "Only as Mrs. Zinna's gambling became increasingly obsessive, and her losses mounted, did she become aware that she would not be able to return all of the funds which she had taken." It was precisely at this point at which Mrs. Zinna became "aware" that she could not repay all of the funds that the taking became an intentional tort and a conversion. The damage became "intended" when she realized she could not pay the money back. This Court finds that Mrs. Zinna's actions in converting her employer's funds to her own use by taking small amounts of money from her employer at a time over the course of some six months and repaying small amounts at a time with gambling winnings was intentional and is excluded from coverage under her homeowner's policy by the intentional acts exclusion.
Breland is distinguishable from the instant case. As explained in Doe v. Smith, 573 So.2d 238, 243 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1139 (La.1991):
... child molestation is one such rare instance where a factual determination of negligence or intentional conduct is inappropriate as a practical matter. These types of acts cannot result from careless conduct and only occur as a result of a deliberate act by the perpetrator ...
Furthermore, the Breland test for determining intent is irrelevant to the rule of inferring intent to injure a child in a child sexual molestation case.
Additionally, we also hold that under these facts, coverage is also precluded under the second exclusion in the policy regarding willful and malicious acts. Accord, Davis, supra at 465.
Accordingly, for the reasons stated, the judgment is affirmed.
AFFIRMED.
GOTHARD, J., concurs with reasons.
GOTHARD, Judge, concurring with reasons.
It is with a heavy heart that I concur with the majority opinion. By affirming the granting of summary judgment in favor of State Farm, we are limiting the plaintiffs' recovery to an action against J.P.M. personally, but I agree that the act of child sexual abuse is so egregious as to automatically toll the "inferred intent" rule. By inferring intent in such cases, we have provided plaintiffs with a sword; an unfortunate and inescapable result, however, is that the rule is then used as a shield by the insurer to preclude coverage under the intentional injury exclusion of its homeowner's policy.
NOTES
[1] State Farm noted it was incorrectly named in the petition and states its correct name is "State Farm Fire and Casualty Company."
[2] In their memorandum in opposition to the motion for summary judgment, the plaintiffs stated that J.P.M. pled guilty to three counts of sexual molestation in a criminal proceeding before the 24th Judicial District Court and that J.P.M. is currently incarcerated.
[3] The policy provides for Personal Liability Coverage which is identified as "Coverage L." It also provides for Medical Payments to Others which is identified as "Coverage M."
[4] We have previously addressed the "inferred intent" rule in a different context. Belsom v. Bravo, 94-876 (La.App. 5th Cir. 4/25/95) 658 So.2d 1304, writ denied, 95-1327 (La.9/1/95); 659 So.2d 737. In Belsom the policy at issue contained identical language to the one herein. We affirmed the granting of summary judgment based on the exclusionary language in a case involving sexual assault of a 17-year-old victim. The writer of the opinion noted:

not only is the act of sexual assault intentional as a matter of law, but the resulting harm is also considered intentional as a matter of law.
Belsom, supra at 1308.
However, two judges concurred in the result on the basis they would not extend the "inferred intent" rule beyond its application to sexual abuse/molestation of children. Although the Belsom case did not concern sexual molestation of children, it nonetheless through dicta showed a recognition of applying "inferred intent" to such cases.
[5] We note at the outset that State Farm improperly relied on an unpublished opinion from this court, Cross v. Brandt, 93-613 (La.App. 5th Cir. 1/12/94). Its reliance on this unpublished opinion is misplaced. Uniform Rules-Courts of Appeal Rule 2-16.3 provides:

Opinions marked "Not Designated for Publication" shall not be cited, quoted, or referred to by any counsel, or in any argument, brief, or other materials presented to any court, except in continuing or related litigation. Opinions marked "Not Designated for Publication" shall be filed in the clerk's office as public records.
Moreover, the Louisiana Supreme Court explained:
Once having been decided in unpublished form, however, the opinion should not have been referred to by counsel at all. Opinions marked "Not Designated for Publication" should not be cited, quoted, or referred to by any counsel, or in any argument, brief, or other materials presented to any court, except in continuing or related litigation. Uniform Rules, supra, 2-16.3. Further, in general, unpublished opinions should not be cited or used as precedent by courts in subsequent cases. See e.g., Ruggero J. Aldisert, Opinion Writing 16 (1990). The reason for such rules is that citation or reliance on unpublished opinions by counsel or by courts defeats the entire purpose for which unpublished opinions are allowedto ease the burden on judges by allowing them to decide cases involving well settled principles of law without having to spend the extensive time and effort that is required in deciding cases involving unsettled principles of law and writing full-fledged, thoroughly reasoned, published opinions. George Rose Smith, The Selective Publication of Opinions: One Courts' Experience, 32 Ark.L.Rev. 26 (1978). See also William L. Reynolds & William M. Richman, The Non-Precedential PrecedentLimited Publication and No-Citation Rules in the United States Courts of Appeals, 78 Colum.L.Rev. 1167, 1185-87 (1978).
Roberts v. Sewerage and Water Bd. of New Orleans, 92-2048 (La.3/21/94); 634 So.2d 341, 349.
Therefore, this court is barred from considering its unpublished opinion as precedent. Rufus Boatwright v. Metropolitan Life Ins. Co., 95-2525 (La.App. 4th Cir. 3/2/96) 671 So.2d 553, 557 n. 1, writ denied, 96-1327 (La.6/28/96); 675 So.2d 1130.
Furthermore, in Brandt we specifically refrained from a recitation of the facts since the facts were well known to the parties. Therefore, any attempt to compare the factual situation in the case at bar with Brandt is also misplaced.