Carolyn FREEMAN, Individually and as Special Administrator of the Estate of Meddie Freeman, deceased, Cedric Freeman, Diane Devita, Lynette Freeman, Meddie Freeman, Jr., Eric Freeman, and Nicole Freeman, Plaintiffs,

v.

J.W. FAIRMAN, Jr., in his Official Capacity as Executive Director, Cook County Department of Corrections, Cook County, Illinois, and Holmes, # 201 and Boyle, # 640, Defendants.

No. 94 C 7730.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 15, 1996.

Lesley Ann Redman, Kenneth N. Flaxman, Kenneth N. Flaxman, P.C., Chicago, IL, for Cedric Freeman, Diane Devita, Lynette Freeman, Meddie Freeman, Jr., Nicole Freeman, Eric Freeman, Carolyn Freeman.

Terry L. McDonald, Michael David Jacobs, Cook County State's Attorney, Chicago, IL, for J.W. Fairman, Jr., Holmes, #201, Boyle, #640.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiffs, the children of Meddie Freeman and the special administrator of his estate, have filed a civil rights action pursuant to 42 U.S.C. § 1983 against Cook County, Illinois; James W. Fairman ("Fairman"), the Executive Director of the Cook County Department of Corrections ("CCDOC"); and officers Holmes and Boyle, who are employed by the Cook County Sheriff in the electronic monitoring unit. Fairman and Cook County have moved to dismiss the claims asserted against them, which stem from Meddie Freeman's death while in the custody of CCDOC. Plaintiffs allege that the decedent died "as the result of a policy of willful, wanton, and deliberate indifference of the Cook County Department of Corrections and of Cook County, Illinois to the serious medical needs of persons confined at the Cook County Department of Corrections." Am. Compl. at 15.

### RELEVANT FACTS [1]

On September 24, 1993, the decedent pled guilty to driving under the influence of alcohol and was sentenced to a period of two years conditional discharge and four months of home confinement on the Sheriff's Electronic Home Monitoring Program. On November 6, 1993, defendants Holmes and Boyle, who were assigned to the Home Monitoring unit, went to the decedent's home and, under circumstances not relevant here, reincarcerated the decedent.

The decedent was immediately taken to the Cook County Jail, where he received a physical examination. The examination did not reveal any abnormality in the size of the decedent's liver. A few days later, on November 10, employees of the CCDOC administered tuberculosis medication to the decedent at several times the normal dosage. Between November 10 and December 30,

---

1. The facts recited here are taken from the plaintiffs' allegations in the pleadings, which the Court must take as true for purposes of this motion. *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir.1992).

1993, the decedent's condition deteriorated considerably. The decedent was taken to the emergency room at Cook County Hospital on December 31, 1993. He remained at the hospital until his death on January 11, 1994.

Count I, which is not the subject of the motions decided in this opinion, alleges § 1983 claims against defendants Holmes and Boyle for Fourth Amendment violations. Counts II through IV of the amended complaint are directed toward the movants. Count II is a federal civil rights claim for Eight and Fourteenth Amendment violations. Count III is a state common law wrongful death claim. Count IV consists of additional civil rights claims under the Fourteenth Amendment and state law claims. Defendants Fairman and Cook County have moved to dismiss Counts II, III, and IV of the plaintiffs' amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## ANALYSIS

When considering a motion to dismiss, the Court views all facts alleged in the complaint—as well as any inferences reasonably drawn therefrom—in the light most favorable to the plaintiff. *Mosley v. Klincar,* 947 F.2d 1338, 1339 (7th Cir.1992). A motion to dismiss will be denied unless it appears beyond doubt that the plaintiff can prove no facts which would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Defendant Cook County first contends that it is not a proper defendant to this cause of action because it does not have statutory responsibility for the Cook County Department of Corrections. Second, both Fairman and Cook County contend that they cannot be liable under § 1983 because the plaintiffs have not shown that an official custom or policy caused the deprivation. Finally, both defendants contend that even if the plaintiffs could establish such a policy, plaintiffs have failed to allege the violation of interests protected under the Eighth Amendment.

## A. Cook County

 "[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989). The issue is "whether there is a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." *Id.* Likewise, for negligence-based state law claims like those at issue here, there must be some causal link between the act complained of and the defendant, whether the defendant directly caused the injury, or supervised the agent who caused the injury, as in respondeat superior. Here, Cook County is an improper defendant because, as a matter of law, it has no authority to direct the CCDOC's actions and thus has no causal link to the harms alleged.

Under Illinois law, the County has no authority to set policy for the CCDOC or direct the actions of CCDOC employees. The Seventh Circuit has found that "[t]he Cook County Jail, and the Cook County Department of Corrections, are solely under the supervision and control of the Sheriff of Cook County." *Thompson v. Duke,* 882 F.2d 1180, 1187 (7th Cir.1989); *see also* 55 ILCS §§ 5/3–15002, 3/15003 (1995). The Cook County Sheriff is an "independently-elected constitutional officer who answers only to the electorate, and not to the Cook County Board of Commissioners." *Thompson,* 882 F.2d at 1187.

 Although the Cook County Board of Commissioners makes the budgetary decisions that affect conditions at the CCDOC, *id.,* the complaint does not allege that the overall conditions at the CCDOC are to blame for Freeman's death. *Compare Wysinger v. Sheahan,* No. 94 C 513, 1995 WL 399564 at *3. Consequently, the complaint does not establish a causal link between Cook County and the alleged constitutional deprivation, and the claims against Cook County must be dismissed.

## B. Fairman/CCDOC

### 1. § 1983 Claims [2]

■ To state a claim under § 1983, a plaintiff must allege (1) a deprivation of a constitutionally protected interest; and (2) a direct causal link between the alleged constitutional deprivation and a governmental policy or custom. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690–94, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978). Fairman argues that the plaintiffs' allegations in the complaint are insufficient both because the plaintiffs do not adequately allege the existence of a governmental policy, and because they have not adequately alleged a constitutional deprivation. We agree on both points.

### *Custom and Policy*

■ The first question is whether the plaintiffs have adequately alleged a policy by Fairman and/or the CCDOC so as to comply with the dictates of *Monell.* The plaintiffs do aver generally that a *"policy* of willful, wanton, and deliberate indifference" to the serious medical needs of prisoners held by the CCDOC led to Freeman's death. Am. Compl. ¶ 15 (emphasis added). This general allegation of a policy is contradicted, however, by the specific allegations of the complaint, which center upon a single event (the medical mistreatment of the decedent).

■ To survive dismissal under the Federal Rules, a complaint need only make "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a). However, if a plaintiff does plead particulars, and they show he has no claim, then he has pled himself out of court. *Thomas v. Farley*, 31 F.3d 557, 558 (7th Cir.1994). Where the specific facts alleged in the complaint demonstrate that there is no valid claim, therefore, dismissal is appropriate. *Id.*

The complaint in this case centers on the claimed medical mistreatment of one prisoner, the decedent. The question is whether this single instance of improper medical care is sufficient as a matter of law to show a governmental policy or custom of unconstitutional action.

■ There are a number of ways to allege that a governmental policy is involved in an unconstitutional act. In the absence of direct evidence such as a written policy, "[t]he usual way [to show the existence of a governmental policy or custom] is by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned" the actions. *Jackson v. Marion County,* 66 F.3d 151, 152 (7th Cir.1995). As noted, the plaintiffs here have not alleged a "series of bad acts" but only a single bad act. Thus, they have not alleged the type of pattern that can create the inference of a policy. *Cf. Cornfield v. Consolidated High Sch. Dist. No. 230,* 991 F.2d 1316, 1326 (7th Cir.1993).

■ An unconstitutional policy can also be inferred when the complaint charges the municipality or other government entity with having engaged in improper conduct directly, such as a claim that the municipality itself failed to properly train its officers to avoid inflicting unconstitutional injuries. *See Jackson,* 66 F.3d at 152 (referring to *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) and its progeny). No similar direct action by the municipal body is alleged here, however.

■ Finally, under certain circumstances a single action can trigger § 1983 liability, where a decision-maker possessing final authority to establish municipal policy either performs the complained-of action, or knows of and acquiesces in the action. *See Pemb-*

---

**2.** Claims against government officers in their official capacities are actually claims against the government entity for which the officers work. *Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985). Claims for money damages against government officials in their official capacities are considered to be suits against the government entity that employs

the official. *Monell v. Department of Social Servs.,* 436 U.S. 658, 689–90, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). As the CCDOC is subject to the supervision and control of the Cook County Sheriff, a suit against Fairman in his official capacity is essentially a suit against the Cook County Sheriff's Department.

*aur v. Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986); *Wysinger v. Sheahan*, No. 94 C 513, 1995 WL 399564 at *3 (citing *Watson v. Sheahan*, No. 93 C 6671, 1994 WL 130759 at *2 (N.D.Ill. Apr. 14, 1994)). Although Fairman is such a decision-maker for the CCDOC, the plaintiffs do not allege that he personally directed (or even knew of) the claimed mistreatment of Freeman.

Taken all together, the allegations of the complaint do not state that Fairman or the CCDOC was responsible for a policy or custom that led to the alleged unconstitutional violation. The plaintiffs therefore cannot satisfy the *Monell* "official policy" requirement. Additionally, the § 1983 claim in Count II must also fail because the plaintiffs have not sufficiently alleged a deprivation of an interest protected by the Eighth Amendment.[3]

### Eighth Amendment Violation

█ Claims by individuals who were convicted before the alleged constitutional deprivations occurred fall under the Eighth Amendment's prohibition against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).[4] The failure to respond to "the serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* at 104, 97 S.Ct. at 291 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)).

█ In order for a plaintiff to state a cognizable § 1983 claim under the Eighth Amendment for medical mistreatment or denial of medical care, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106, 97 S.Ct. at 292. Defendants do not dispute the apparent seriousness of the decedent's medical needs.

Therefore, the issue is whether the plaintiffs have sufficiently alleged that "deliberate indifference" existed.

█ The "deliberate indifference" required by the Eighth Amendment is a standard higher than simple negligence. Negligence alone is not actionable under § 1983. *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir.1985). Thus, ordinary medical malpractice based upon negligence in providing care does not state a claim under the Eighth Amendment. *See Estelle*, 429 U.S. at 106, 97 S.Ct. at 292 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Holmes*, 930 F.2d at 1200 (§ 1983 plaintiff must demonstrate more than mere negligence in the diagnosis or treatment of a medical condition).

█ The large majority of cases alleging medical Eighth Amendment violations concern the denial of medical care to a prisoner, rather than the provision of substandard care: "no care," rather than "bad care." *See, e.g., Holmes v. Sheahan*, 930 F.2d 1196 (7th Cir.), *cert. denied*, 502 U.S. 960, 112 S.Ct. 423, 116 L.Ed.2d 443 (1991). There are instances, however, in which the care provided may be so bad as to constitute an Eighth Amendment violation. Deliberate indifference requires that "the official knows of and disregards an excessive risk to inmate health or safety." *Wysinger v. Sheahan*, No. 94 C 513, 1995 WL 399564 at *4 (N.D.Ill. July 6, 1995) (quoting *Farmer v. Brennan*, —— U.S. ——, ——, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994)).

█ Indifference "may be evinced by either 'repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff' or by showing 'systematic or gross deficiencies in staffing, facilities, equipment, or procedures.'" *French v. Owens*, 777 F.2d 1250, 1254 (7th Cir.1985) (quot-

---

3. As we dismiss the § 1983 claims in Count IV for failure to adequately allege a governmental policy or custom, we do not reach the question of the nature of the constitutional deprivation alleged in that count.

4. Fairman contends that this claim is merely a disguised medical malpractice claim, and that as such, it is barred by the plaintiffs' failure to file

an affidavit as required by the Illinois Healing Arts Malpractice Act, 735 ILCS § 5/2–622 (1995). The plaintiffs have pled this as an Eighth Amendment claim, however, and we take them at their word and apply the standards relevant to Eight Amendment claims, *see infra*. Accordingly, no affidavit is required for this claim.

ing *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981)). *See also Kelley v. McGinnis,* 899 F.2d 612, 616 (7th Cir.1990) (repeated, long-term negligent treatment of a prisoner's medical condition may amount to deliberate indifference to the inmate's serious medical needs). Essentially, a long-term pattern of negligence or some type of systemic deficiency in available medical resources is necessary to show that the mistreatment goes beyond the occasional medical negligence by an employee, into the realm where the governmental agency should be expected to know of the problem and remedy it.

 We turn now to an examination of the specific allegations of the complaint to determine if they meet the Eighth Amendment standard of deliberate indifference. Plaintiffs allege that the medical care the decedent received at the Cook County Jail was the result of a "policy of willful, wanton, and deliberate indifference." Am. Compl. ¶ 15. Defendants assert, however, that this "bare and conclusory" allegation is insufficient to establish the violation of the decedent's Eighth Amendment rights. As noted above, where a complaint contains specific factual allegations, they control over general, conclusory allegations. *See Thomas v. Farley,* 31 F.3d 557, 558 (7th Cir.1994).

Although the facts alleged in the amended complaint suggest that prison medical personnel misdiagnosed and mistreated the decedent's condition, they do not support the conclusion that there was deliberate indifference to the decedent's serious medical needs in the sense used above, i.e., a pattern of negligent acts or gross deficiencies in the medical resources. Plaintiffs allege that the decedent received a medical examination which did not reveal any abnormality in the size of the decedent's liver, Am. Compl. ¶ 11; that CCDOC employees administered tuberculosis medication to the decedent at several times the normal dosage, *id.* ¶ 12; and that the decedent's condition deteriorated until he eventually died, *id.* ¶¶ 13–14. The events described, if true, are undoubtedly shocking. Nevertheless, even if all the inferences in the plaintiffs' favor are drawn, even to the point

of concluding that CCDOC employees affirmatively made Freeman ill by administering medication to him improperly, they still allege only a single course of medical negligence received by one person, not the pattern or systemic deficiencies required to show deliberate indifference under the Eighth Amendment. As Count II does not make out a claim of deprivation of a constitutionally protected interest, it is not actionable under § 1983.

### 2. *State Law Claims Against Fairman*

 Defendants assert that plaintiffs' state law claims should be dismissed because plaintiffs have not filed an affidavit pursuant to the Healing Arts Malpractice Act, 735 ILCS 5/2–622 (1995). However, plaintiffs contend that the wrongful death and loss of society claims do not sound in medical malpractice, but instead allege a negligence claim based on a breach of the jailer's duty of due care.

 Under Illinois law, jailers must "exercise ordinary and reasonable care for the preservation of their [prisoners'] health and life under the circumstances of the particular case." *Dezort v. Village of Hinsdale,* 35 Ill.App.3d 703, 710, 342 N.E.2d 468, 473 (2d Dist.1976); *see also Porter v. County of Cook,* 42 Ill.App.3d 287, 290, 355 N.E.2d 561, 564 (1st Dist.1976). Here, the plaintiffs have pled proper claims against the decedent's jailer—Fairman and the CCDOC—under the above theory. In addition, we note that the plaintiffs have not sued any physicians, as would be the case in an action for healing arts malpractice. Accordingly, we conclude that this is not an action for medical malpractice, and that an affidavit under the Healing Arts Malpractice Act is not required. *See, e.g., Doe v. City of Chicago,* 883 F.Supp. 1126, 1134 (N.D.Ill.1994). Therefore, we deny defendant Fairman's motion to dismiss the plaintiffs' state law claims for failure to include a § 2–622 affidavit.

### CONCLUSION

For the foregoing reasons, the Court grants defendant Cook County's motion to dismiss [9–1] in full. Defendant Fairman's motion to dismiss [7–1] is granted as to

Count II and the federal claims in Count IV, and denied as to the state law claims in Counts III and IV. Given this Court's unquestioned jurisdiction over Count I, the Court will exercise its discretion to retain supplemental jurisdiction over the state law claims in Counts III and IV. If the plaintiffs ever obtain new facts which would allow them to re-plead the § 1983 claims which we have dismissed today, consistent with Rule 11 of the Federal Rules of Civil Procedure and this Order, they may seek leave of court to do so. A status hearing in this case is set for March 1, 1996 at 9:00 a.m.