No. 91,247

D.W., *Appellant,* v. RICHARD BLISS and CAROL BLISS, *Appellees.*

112 P.3d 232

Opinion filed June 3, 2005.

*Patrick R. Miller*, of Ullman, Dezube & Miller, P.A., of Overland Park, argued the cause and was on the brief for appellant.

*Derrick A. Pearce*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause and was on the brief for appellee Carol Bliss.

The opinion of the court was delivered by

LARSON, J.: In this first impression damage action, we must decide if the wife of a criminal offender has a special relationship with a minor, giving rise to her having a duty to warn the minor of the likelihood of being sexually abused by her husband.

We must further decide if liability may be imposed on the wife of a criminal offender under the theory of premises liability, as described by Restatement (Second) of Torts § 314A(3) (1964) for the criminal acts of her husband occurring on real property which they jointly owned and where they both resided.

In answering these questions, we set forth the facts, the history of the litigation, and the rulings of the district court and Court of Appeals; state the standards of review and the contentions of the

parties; and analyze the duty to warn and premises liability issues before reaching our conclusions.

### Factual Background

D.W. met Richard Bliss in May 1998 while D.W. was waiting for a school bus in his neighborhood. Richard asked D.W. if he would mow Richard's lawn, and D.W. agreed to do so.

During the summer of 1998, D.W. became 15 years old in July and developed a relationship with Richard. The two spent time together playing racquetball, fishing, shopping, watching television in Richard's house, and just talking. Richard gave D.W. gifts and money.

D.W.'s mother initially believed Richard was acting as a mentor to D.W. Richard was active as a leader and mentor in various youth groups and regularly devoted time to such endeavors.

During this time, Richard was married to Carol Bliss, and they resided together in Johnson County. Carol was present during some of the time Richard and D.W. spent together at the Bliss home, but there was little interaction between Carol and D.W., who characterized his relationship with Carol as nonexistent. D.W.'s telephone calls were to Richard; Carol never invited D.W. to the Bliss household. Carol was never involved in D.W.'s activities either inside or outside of the Bliss home.

In the fall of 1998, Richard began having criminal sexual encounters with D.W. Most were outside the Bliss home at the Wolbach Farm, at a duck club in Wyandotte County, and in Bennett Springs, Missouri. Carol never witnessed any of the encounters and denied she knew about them. D.W. did not believe Carol knew the encounters were occurring. Richard and D.W. made every effort to conceal the improper relationship from Carol.

Several months later, Richard hired a prostitute for D.W. Ultimately, the criminal acts perpetrated by Richard became known. As the result of his illicit sexual actions with D.W., Richard pled guilty in Wyandotte County to one count of furnishing alcohol to a minor and one count of aggravated indecent liberties and pled guilty in Johnson County to one count of aggravated indecent liberties.

After the charges against Richard were filed, two men, A.M. and G.S., whom Richard had previously mentored, came forward to D.W.'s family and admitted having sexual relationships with Richard. Deposition testimony clearly showed that neither sexual relationship occurred until both men were adults. Both men met Richard while they were teenagers.

A.M., born in February 1966, met Richard when he was 14 years old through a YMCA mentoring program. He lived in the Bliss home for 2 or 3 months as a sophomore in high school when he had problems with his mother. A.M. began having sexual encounters with Richard after he turned 18 and continued until he was 22. Richard and A.M. continued a friendly relationship after they ceased being involved sexually.

A.M. testified to an incident where Carol started to enter a room where he and Richard were watching a pornographic movie and masturbating each other. The tape was turned off, and Richard met Carol at the door. A.M. knew they talked but did not know what was said. Another time, Carol started down the stairs into the basement where Richard was performing oral sex on A.M. A.M. stated he quickly pulled his pants up, and Carol stopped part way down the stairs and went back up the stairs, saying nothing. A.M. admitted it was speculation on his part as to whether Carol knew about the sexual encounters.

A.M. introduced G.S. to Richard while they were in high school. G.S., born in December 1965, mowed Richard's lawn. After he turned 18, he moved into the Bliss house. G.S. did not begin to have a sexual relationship with Richard until he was 18, and it continued until 1990, when he was 25 years old. After the sexual encounters stopped, he continued to live in the Bliss home for some time and enjoyed a family-type relationship with Richard and the two Bliss daughters.

G.S. testified that while he was living in the Bliss house, there were a number of times when Carol came upstairs to the bedroom and knocked on the closed door when he and Richard were engaged in sexual activity. Richard would go to the door and speak with Carol, but G.S. did not hear the conversation. There was also testimony that Carol found pornography under G.S.'s bed. G.S.

testified Carol never witnessed any of the acts and that he and Richard agreed to keep the sexual relationship secret from Carol.

D.W., G.S., and A.M. all testified in their depositions that Richard lied to Carol to prevent her from having knowledge about his sexual encounters with them. In his deposition, Richard claimed Carol had absolutely no knowledge about his sexual relationships. He said he had hidden them for more than 10 years. He denied that Carol had ever given any indication that she knew of his sexual relationships with D.W., G.S., or A.M.

## History of Litigation

D.W. brought a civil action against Richard and Carol. D.W. later dismissed with prejudice his action against Richard, leaving Carol as the sole defendant. D.W.'s claims were for negligence, negligent infliction of emotional distress, and defamation by Richard's attorney. D.W. alleged Carol knew about Richard's sexual propensities based on the statements of G.S.and A.M. and should have warned him. D.W. further argued that Carol, as co-owner of the home, had a duty to warn him of the dangerous conditions existing on the property. D.W. finally contended Carol conspired with Richard to harm him by using marital funds to hire attorneys who defamed him by their communications.

Carol, by her answer and summary judgment affidavit, denied any knowledge of Richard's sexual relationships with D.W., G.S., or A.M. until after Richard's arrest on the charges involving D.W. She denied walking in on encounters between A.M. and Richard and stated she routinely knocked on G.S.'s door out of respect for his privacy just like she did with her daughter's doors. She stated it was not unusual for young men to be around the house, as Richard had mentored many during their marriage. She admitted to finding pornography in G.S.'s room but did not equate that to a sexual relationship between G.S. and Richard. She denied D.W. was ever in her care, custody, or control.

Carol moved for summary judgment, contending there was no material evidence she knew Richard was a threat to D.W.; D.W. had never been in her care, custody or control; she had no special relationship with D.W. or Richard giving rise to a duty to warn or

protect D.W.; and the claims of negligent infliction of emotional distress, child endangerment, and civil conspiracy failed as a matter of law. D.W. withdrew his claims for negligent infliction of emotional distress and child endangerment, but responded on his claims of negligence and civil conspiracy, stating summary judgment was improper.

## District Court's Ruling

The district court granted Carol's motion for summary judgment on all counts. The court stated and held:

"Plaintiff has filed several counts against the defendant Carol Bliss. These counts are based upon three separate duties: one, that Carol Bliss was entrusted with the care of the plaintiff and that this created a duty which was breached by her failing to stop her husband from having sexual relations with plaintiff, two, that as co-owner of the property (house) she has a duty to warn licensees of dangerous conditions which exist on the property, and she failed to make such warnings, and third, that she conspired with her husband to cause harm to the plaintiff by use of marital funds to hire attorneys who defamed plaintiff by their communications.

"The Court has examined each of the cases cited in the parties' briefs, and after said review does find that the *Bauswell v. Mauzey*, 916 F. Supp. 787, which was decided by Judge Van Bebber in 1996 does correctly set out the law of Kansas in this area, and application of *Bauswell* convinces this Court that Carol Bliss is entitled to summary judgment as to all claims against her. Simply the Court finds that no duty existed in this case that could be breached, and therefore no liability can be placed on Carol Bliss. Both the claims as to 'special relationships' require that Carol Bliss be in charge or control of either her husband or the plaintiff. No facts suggest this to be the case. Plaintiff was the guest of Mr. Bliss and even if the court finds that Carol Bliss knew of the sexual acts with the other men some 10 years before, the *Bauswell* case makes it clear that this does not create duty, unless the special relationship exists.

"Further, no facts are present which indicate that Carol Bliss communicated any statements or writings to anyone which can be the basis for the defamation claim. Mere use of marital funds to employ her husband's attorney cannot rise to the level necessary for defamation or civil conspiracy."

## Court of Appeals' Ruling

D.W. appealed to the Court of Appeals, contending Carol owed a duty to him while he was in the Bliss home and that sufficient facts existed to establish that Richard's acts were foreseeable to Carol.

Carol argued there was no special relationship between her and Richard or D.W. to give rise to a duty to warn D.W. and that Richard's conduct was not foreseeable by her.

The Court of Appeals' opinion recited our well-known standard of review of summary judgment motions and the necessity in negligence actions to show the existence of a duty, and then examined whether a duty existed. The Court of Appeals' opinion quoted Restatement (Second) of Torts § 315 (1964), which stated there was no duty to control the conduct of a third person unless a special relationship existed that imposed a duty to control the third person's conduct, or a special relationship existed between the actor and the other that gave the other a right to protection. The opinion stated none of the relationships as set forth in Restatement (Second) of Torts §§ 316-19 existed under these facts, "*i.e.*, the relationship between Carol and Richard did not require Carol to control Richard's sexual conduct with D.W." *D.W. v. Bliss*, No. 91,247, unpublished opinion filed July 30, 2004, slip op. at 9.

The Court of Appeals' opinion then noted comment (c) to § 315 referred to §§ 314A and 320 and stated: "The only section which comes close to applying to the relationship between Carol and D.W. is § 314A(3), which states: 'A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.' " Slip op. at 9. The opinion observed there was no evidence Carol held her residence open to the public but notes Restatement (Second) of Torts § 314A, comment b stated the specifically listed relations " 'are not intended to be exclusive, and are not necessarily the only ones in which a duty of affirmative action for the aid or protection of another may be found.' " Slip op. at 9.

The Court of Appeals next noted the distinction between licensees and invitees had been abolished by *Jones v. Hansen*, 254 Kan. 499, 509, 867 P.2d 303 (1994). The court then stated D.W. was at least a licensee and concluded: "Therefore, Carol owed D.W. a duty to protect him from defective or dangerous property conditions." Slip op. at 10. Thus, the opinion equated Richard with a partially concealed defective stairwell.

The Court of Appeals' opinion quoted *Nero v. Kansas State University*, 253 Kan. 567, 584, 861 P.2d 768 (1993), stating: " 'Prior similar acts committed upon invitees furnish actual or constructive notice to a landowner.' " Slip op. at 10. The opinion then stated the *Nero* rule should apply to social guests and concluded: "[I]f it was foreseeable that Richard would sexually abuse D.W., Carol had a duty to exercise reasonable care to protect D.W." Slip. op. at 11.

The opinion held a genuine issue existed as to whether Carol knew about Richard's sexual relationships with A.M. and G,S., making this a fact question as to whether Richard's criminal conduct should have been foreseeable to Carol. The Court of Appeals then held summary judgment was inappropriate. Slip op. at 13.

## Carol's Petition for Review

Carol's petition for review argues a special relationship is not established by saying the facts " '[come] close' " to those required by the Restatement. She contended that equating Richard with a defective and dangerous property condition was legally incorrect. Carol stated she did not have the right to control Richard's usage of their jointly owned home. Carol pointed out she never had custody and control of D.W., who came into the Bliss home only on Richard's invitation. She contended her situation was similar to *Gardin v. Emporia Hotels, Inc.*, 31 Kan. App. 2d 168, 172, 61 P.3d 732, *rev. denied* 275 Kan. 963 (2003), where the relationship between the plaintiff and the motel was "too far removed" to impose a duty upon the motel. Carol argued that under the Court of Appeals' reasoning, there would be no end of the duties a wife would owe for her husband's criminal actions so long as they occurred in a residence they jointly owned.

We granted Carol's petition for review.

## Standard of Review

The standard of review of grants of summary judgment is well known and often stated. K.S.A. 60-256(c) teaches us a party is entitled to summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." We have further said:

" 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]' " *Exploration Place, Inc. v. Midwest Drywall Co., Inc.*, 277 Kan. 898, 900, 89 P.3d 536 (2004) (quoting *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 [2002]).

However, as *McGee v. Chalfant*, 248 Kan. 434, 437, 806 P.2d 980 (1991), noted: "The existence of a legal duty is a question of law to be determined by the court." We have unlimited review of questions of law. *T.S.I. Holdings, Inc. v. Jenkins*, 260 Kan. 703, 716, 924 P.2d 1239 (1996).

### Special Relationships, Duty to Warn, Premises Liability

We must first determine if there is a special relationship between Carol and Richard or Carol and D.W. giving rise to Carol's duty to warn D.W. of Richard's propensity to commit criminal child abuse.

In doing this, we must first recognize there was no evidence of any prior criminal acts by Richard. Richard's last involvement with G.S. stopped in 1990, 8 years prior to the acts involving D.W.

The necessity of proving the existence of a duty is based on the requirements of establishing negligence. In *Williamson v. City of Hays*, 275 Kan. 300, 311, 64 P.3d 364 (2003), we said: " 'In order to establish negligence, a plaintiff must prove the existence of a duty, a breach of that duty, an injury, and proximate cause, that is, a causal connection between the duty breached and the injury suffered.' [Citation omitted.]" The necessity of establishing existence of a duty is essential, for without a duty there can be no breach to support D.W.'s claim. See *Hackler v. U.S.D. No. 500*, 245 Kan. 295, 297, 777 P.2d 839 (1989).

Generally, an actor has no duty to control the conduct of a third person to prevent that person from causing harm to others unless

there is a special relationship between the actor and the third party or the actor and the injured party. Restatement (Second) of Torts § 315 (1964); *Thies v. Cooper*, 243 Kan. 149, 151, 753 P.2d 1280 (1988). As we said in *Nero v. Kansas State University*, 253 Kan. at 571-72:

"As far back as 1983, this court, speaking through Justice McFarland, stated:

'Although this court has never formally adopted . . . § 315, . . . we discussed the concept of special relationship in *Robertson v. City of Topeka*, 231 Kan. 358, 644 P.2d 458 (1982). . . . We observed a special relationship or specific duty has been found when one creates a foreseeable peril, not readily discoverable, and fails to warn. 231 Kan. at 364.' *Durflinger v. Artiles*, 234 Kan. 484, 499, 673 P.2d 86 (1983)."

### The Restatement (Second) of Torts § 315 (1964) states:

"There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection."

### Comment c to § 315 explains:

"The relations between the actor and a third person which require the actor to control the third person's conduct are stated in §§ 316-319. The relations between the actor and the other which require the actor to control the conduct of third persons for the protection of the other are stated in §§ 314A and 320."

Our prevailing rule in Kansas is that in the absence of a "special relationship," there is no duty of an actor (Carol) to control the conduct of a third person (Richard) to prevent harm to another (D.W.). As was noted in *C.J.W. v. State*, 253 Kan. 1, 8, 853 P.2d 4 (1993), there may be special relationships giving rise to a duty to control in situations described in Restatement (Second) of Torts between a parent and child (§ 316), master and servant (§ 317), persons in charge of one with dangerous propensities (§ 319), and persons with custody of another (§ 320). We have a number of appellate decisions involving these sections of the Restatement. Some have helpful language, but many involve governmental agencies as the "actor" and are clearly different factually from our situation.

We do have a trilogy of Kansas cases involving health care professionals as the actors and § 315 duties of control in issue.

In *Boulanger v. Pol*, 258 Kan. 289, 307, 900 P.2d 823 (1995), we held a psychiatrist did not have a duty to control or warn of the actions of a voluntary patient where the third party (plaintiff) was aware of the potential danger. *Calwell v. Hassan*, 260 Kan. 769, 925 P.2d 422 (1996), involved a claim by an injured bicycle rider against a physician who was treating the driver of a car who fell asleep and hit the plaintiff. We held no special relationship existed that would impose a duty on the defendant physician under § 315, and further no duty was owed from the defendant physician to the injured plaintiff under § 324A of the Restatement (Second) of Torts. 260 Kan. at 789.

The third case, *Hesler v. Osawatomie State Hospital*, 266 Kan. 616, 971 P.2d 1169 (1999), involved claims against individual physicians and nurses and the State Hospital where a patient on a temporary off-grounds pass riding with his mother in a car grabbed the steering wheel of the car, causing it to veer into the path of the vehicle occupied by the plaintiffs. Here there was evidence of prior dangerous propensities of the patient toward himself but no express threat to any other parties, including the plaintiffs.

Justice Abbott, writing for the *Hesler* court, noted the review in *Boulanger* of cases involving § 315 and relied on *Schmidt v. HTG, Inc.*, 265 Kan. 372, 961 P.2d 677, *cert. denied* 525 U.S. 964 (1998), where we held no duty existed under § 315 to warn the third party (Stephanie Schmidt) about the dangerous propensities of a parolee in the absence of an express threat. The *Hesler* opinion states: "Even if this court found that a special relationship existed, [which it did not] the question of whether the duty to control extends to a duty to warn potential victims would remain." 266 Kan. at 630.

Although the actor was a school district and not an individual, in *Beshears v. U.S.D. No. 305*, 261 Kan. 555, 566, 930 P.2d 1376 (1997), we held no duty was owed from a defendant school district to the minor plaintiff for injuries occurring off school premises and after school hours. Justice Six relied on the following quote from *Calwell*: " 'We have found a duty owing under § 315(a) only in situations in which the party owing the duty did have the ability or

right to control the third person causing the harm.' " 261 Kan. at 561. We held U.S.D. 305 had neither the ability nor the right to control the plaintiff or the third person causing the harm.

The trial court and the Court of Appeals found no duty on the part of Carol to control Richard. Nor do we. There is no basis for liability here under the general principle of Restatement (Second) of Torts § 315(a).

However, § 315(b) speaks of the existence of a special relationship between the actor (Carol) and the other (D.W.) which gives to the other a right of protection. This points us to §314A of the Restatement (Second) of Torts, which in applicable part states:

"§ 314A. Special Relations Giving Rise to Duty to Aid or Protect

. . . .

"(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation."

This is an exception to the general rule of § 314 relating to the "Duty to Act for Protection of Others," which states: "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."

As comment (a) to § 314 teaches us, the above general rule should be read with the other sections to follow. We therefore look to § 314A(3), which, when read explicitly, would not impose upon Carol (the actor) any duty to members of the public (D.W.).

In the first place, Carol never held her home open to members of the public. In addition, the record in our case is clear that D.W. never entered the Bliss home in response to Carol's invitation. Richard was always the invitor of D.W., who characterized his relationship with Carol as nonexistent.

At this point, it would be logical to hold § 314A(3) is simply not applicable to our facts. However, the Court of Appeals' opinion points to the caveat to § 314A which states, "[t]he Institute expresses no opinion as to whether there may not be other relations which impose a similar duty," and notes the distinction between licensees and invitees has been abolished in Kansas. The Court of Appeals' opinion then applied the rule that "the occupier of land

owes a duty of reasonable care under the circumstances to all entrants on the property who are present with the occupier's consent." *Jones*, 254 Kan. at 509; *D.W.*, slip op. at 9-10.

The Court of Appeals next suggests that Carol owed D.W. a duty to protect him from a defective or dangerous property condition; equates Richard with a partially concealed stairwell; and sets forth the quote from *Nero*, 253 Kan. at 584, that "[p]rior similar acts committed upon invitees furnish actual or constructive notice to a landowner." According to the Court of Appeals, this made the foreseeability of Richard sexually abusing D.W. a fact issue to be determined by a jury and requiring summary judgment in Carol's favor to be reversed.

There are numerous problems with this analysis. First, the actual relationship, or lack thereof, between Carol and D.W. is directly contradictory to the specific language of § 314A(3). Our facts are simply not applicable to § 314A(3).

Next, the caveat to § 314A about the relationships specified not being intended to be exclusive is utilized to create a new duty on behalf of a wife, resulting in legal responsibility for the criminal acts of her first-time offender husband. If we apply the Restatement caveat in this manner, we would be rewriting the Restatement as we wish it to read without limitation.

It is not logical to create liability when clearly distinguishable facts are only "close" to what is necessary to establish a special relationship. We have, in all our special relationships/duty cases, followed the outlines of the Restatement, and to judicially create responsibility based on the marriage relationship would create a "slippery slope" of unlimited possibilities for family liability that would have no practical stopping point. See *Gritzner v. Michael R.*, 235 Wis. 2d 781, 797, 611 N.W.2d 906 (2000), for a discussion of the "slippery slope" problem in such a holding.

Equating the acts of a husband to a "defective and dangerous property condition" has the effect of establishing the existence of a duty dependent upon the relative degree of harm to a plaintiff. This we have never done despite the tragedy imposed on victims in cases such as *Hesler*, 266 Kan. 616; *Schmidt*, 265 Kan. 372; *Beshears*, 261 Kan. 555; and *Calwell*, 260 Kan. 769.

However, we recognize there is a special relationship between possessors of land and their licensees that may lead to premises liability. See *Jones*, 254 Kan. at 509; *Nero*, 253 Kan. at 572. This *is* a readily accepted theory of legal liability in Kansas that we must consider. D.W.'s counsel most strongly relied on *Jones* and *Nero* and argued they must be applied in this case.

Our Kansas law on premises liability underwent a change in *Jones*, where we eliminated the historical distinction between duties owed to licensees and invitees and held: "The duty owed by an occupier of land to invitees and licensees alike is one of reasonable care under all the circumstances." 254 Kan. at 509.

In *Gragg v. Wichita State Univ.*, 261 Kan. 1037, 934 P.2d 121 (1997), premises liability was in issue, as was the relationship of the parties. The plaintiffs were the heirs of Barbara Gragg, who was shot and killed by a stranger, Anthony Scott, at a 1993 fireworks display held on the campus of Wichita State University (WSU). Additional defendants were the sponsors of the Independence Day celebration. In upholding summary judgment for all the defendants, §§ 314A(3), 318, and 344 of the Restatement (Second) of Torts were considered. We held that none of the sponsors were possessors or in control of the premises or had violated any duty to Gragg. 261 Kan. at 1045-47. As to WSU, we held that the Graggs failed to show, as a matter of law, that a special duty existed on behalf of WSU to protect Gragg from the unanticipated and unexpected attack by Scott. 261 Kan. at 1057.

The Graggs had attempted to place WSU in the same shoes as Kansas State University (KSU) was in *Nero*, just as D.W. does here. *Nero* is clearly distinguishable here for, as we said in *Gragg*: "*Nero*'s holding . . . is more basically represented as follows: 'KSU is a landlord furnishing housing to its students in competition with private landlords. It owes a duty of reasonable care to its tenants.' " 261 Kan. at 1053.

*Nero* is, in reality, a landlord and tenant case, and the duty of care involved was that of a third party known to KSU to have recently been charged with rape. This is totally different from the relationships in our case. D.W. was not a tenant. The record, read most favorably to D.W., shows Carol had no knowledge that Ri-

chard had ever violated any criminal law. Richard's sexual involvement with an adult had stopped 8 years before he met D.W. Our facts are totally different than *Nero*. *Nero* is not sustainable authority for establishing a special relationship imposing a duty on Carol to warn D.W. of potential danger.

In considering premises liability, we held in *Brock v. Richmond-Berea Cemetery Dist.*, 264 Kan. 613, 620, 957 P.2d 505 (1998):

"Before a landowner may be held liable for an injury resulting from a dangerous condition, however, the plaintiff generally must show that the defendant had actual knowledge of the condition or that the condition had existed for such a length of time that in the exercise of ordinary care the landowner should have known about it. [Citation omitted.]"

The suggestion that Richard is to be equated with and considered to be "property" or a "dangerous condition" in order to give rise to premises liability, while creative, has no support in reported Kansas cases.

A similar argument was made in *Hackett v. Schmidt*, 630 So. 2d 1324, 1328-29 (La. App. 1993), where it was held a wife could not be held responsible under a "premises liability" theory for her husband's negligent or intentional acts in allegedly sexually molesting a visiting child, inasmuch as the husband was not "property" and there was no special relationship between the wife and the child. In *Hackett*, the husband had engaged in sexual misconduct with minor females 15 years earlier. This fact was known to the wife, and the plaintiffs argued she should be responsible for the husband's subsequent unexpected conduct.

The *Hackett* court ruled there was no special relationship and no duty to warn. In response to a "premises liability" theory raised on oral argument, the Louisiana court said:

"The Hacketts argued that Mrs. Schmidt should be liable for failing to warn about or prevent the abuse in the same way that she would [be] liable for failing to warn about or prevent an injury caused by the existence of a hole in the floor of her home or the presence of a dog on the premises. However, this situation cannot be likened to a premises liability situation, where the owners of the property may be strictly liable for injuries caused by defects in their property. Mr. Schmidt is not Mrs. Schmidt's property." 630 So. 2d at 1328-29.

Another case which denied application of premises liability is *Eric J. v. Betty M.*, 76 Cal. App. 4th 715, 90 Cal. Rptr. 2d 549 (1999), where the former girlfriend of a parolee, whose 8-year-old son had been sexually molested by the parolee, brought suit against members of the parolee's family, alleging they had failed to inform her of the parolee's prior conviction for felony child molestation and, also, that acts had occurred on premises owned by family members.

In *Eric J.*, the family members knew of the parolee's criminal convictions, but (1) this was not deemed sufficient to require liability under the theory of premises liability as no relationship existed between the harm sustained and the premises where the molestation occurred, and (2) family members were not in a special relationship with the girlfriend and did not owe a duty to inform her about parolee's criminal past or warn her of potential danger. 76 Cal. App. 4th at 726-28.

In discussing premises liability, the *Eric J.* court distinguished a case relied on by the plaintiff, *Pamela L. v. Farmer*, 112 Cal. App. 3d 206, 169 Cal. Rptr. 282 (1980), as not being based on premises liability. The wife of a sexual offender there was held liable for offenses he committed because she had invited his victims onto their property, thus, in effect, procuring them for him. *Eric J.*, 76 Cal. App. 4th at 729. The *Eric J.* court said the parolee had been returned to society, could not be the equivalent of a "brute beast without the capacity to repent," and held his presence on the property could not be considered a dangerous condition of the property. 76 Cal. App. 4th at 725. Thus, there was no basis for premises liability. 76 Cal. App. 4th at 729-30.

As to Eric J.'s general negligence argument, the California court said upholding such a claim would require the court to abandon its long-time rule against liability for mere nonfeasance. There was held to be no special relationship, and the court would not overturn the "no duty to aid" rule, which it held, under their facts, would create intolerable conflicts of interests within families. 76 Cal. App. 4th at 729-30.

The district court in our case, in granting summary judgment to Carol, noted that even if she knew of her husband's sexual acts

with other adult men some 10 years previously, the holding of *Bauswell by and through Bauswell v. Mauzey,* 936 F. Supp. 787 (D. Kan. 1996), precluded liability. There was no mention of "premises liability" in the *Bauswell* case, where children, by and through their mother, brought a negligence action against a husband and wife and alleged the wife had a duty to prevent the husband from molesting the children.

Even though actual knowledge of previous sexual abuse by the husband was alleged, Judge Van Bebber, in granting summary judgment to the wife based on the husband's actions, first noted that whether a duty exists is a question of law and that the wife maintained there was no special relationship between her and her husband as that term is defined in Restatement (Second) of Torts §§ 317-320. The *Bauswell* plaintiffs had argued the husband was acting as his wife's servant in a babysitting arrangement.

After holding no case law had been cited to support the theory that the relationship of wife and husband is synonymous with that of an employer and employee to give rise to § 317 duty and resulting liability, the *Bauswell* decision continued:

> "There also is no basis in the record to support a special relationship between the defendant and her husband based upon § 319, the duty of those in charge of a person having dangerous propensities. The plaintiffs do not allege that the defendant had 'charge' of Clifford Mauzey." 936 F. Supp. at 789-90.

*Bauswell* is good authority for Carol's argument that she cannot be in control of or in charge of Richard. The decision does not relate directly to D.W.'s premises liability claim except to bolster the fact that Richard cannot be considered a dangerous condition under Carol's control. Where this court has considered the duty to control, we have required a finding that the person charged with the duty actually have the ability to control the third person's conduct. *Beshears,* 261 Kan. at 561; *Calwell v. Hassan,* 260 Kan. 769, 783, 925 P.2d 422 (1995).

Richard, as a cotenant of the Bliss home, had an undivided right to possession and control of the property. See *Fry v. Dewees,* 151 Kan. 488, 493, 99 P.2d 844 (1940). Carol had no right to restrict Richard, as co-owner, from inviting D.W. on to the property. Ex-

tension of her ownership interest into responsibility for Richard's criminal actions is unwarranted.

There are a number of cases of the nature we face here that have been decided around the country. See *Gritzner*, 235 Wis. 2d at 803 n.12. *Pamela L.*, 112 Cal. App. 3d 206, is cited as a case allowing recovery. *Eric J.*, 76 Cal. App. 4th 715, is noted to be a case not allowing recovery. We have previously discussed both cases. The other cases mentioned in the *Gritzner* footnote are factually different, with recovery being allowed where the wife had actual knowledge of her husband's sexual abuse. *J.S. v. R.T.H.*, 155 N.J. 330, 714 A.2d 924 (1998). Recovery was also allowed against a grandmother for failure to protect her granddaughter from a known risk of sexual abuse by the grandfather. *Doe v. Franklin*, 930 S.W.2d 921 (Tex. App. 1996).

The cases cited in the *Gritzner* footnote where recovery was not allowed included *Doe v. Goff*, 306 Ill. App. 3d 1131, 716 N.E.2d 323 (1999); *H.B. v. Whittemore*, 552 N.W.2d 705 (Minn. 1996); and *T.A. v. Allen*, 447 Pa. Super. 302, 669 A.2d 360 (1995). Although decided on a statute of limitations issue, no recovery would have been allowed under an analysis in *Chaney v. Superior Court of Los Angeles County*, 39 Cal. App. 4th 152, 46 Cal. Rptr. 73 (1995), which was not included in the *Gritzner* footnote.

There is obviously no issue of negligent supervision in our case, as Carol had little contact with D.W. and he was never under her care, custody, or control. Negligent supervision could not be a basis for the finding of a duty to warn.

## Conclusion

Under our clear Kansas precedent, an actor (Carol) has no duty to control the conduct of a third person (Richard) to prevent that person from causing harm to others (D.W.) unless there is a special relationship between the actor and the third party or the actor and the injured party.

There was no special relationship between Carol and Richard or between Carol and D.W., giving rise to a duty to warn D.W. of the unknown and unexpected criminal act on Richard's part.

The facts in this case do not give rise to premises liability on Carol's part for Richard's criminal acts for the many reasons previously set forth in this opinion.

In the absence of a duty, there can be no breach of a duty and no basis for a negligence cause of action.

With no duty being shown, we need not discuss foreseeability.

The Court of Appeals is reversed. The district court is affirmed.

GERNON, J., not participating.

LARSON, S.J., assigned.