WICKER, Judge.
The plaintiff, Shirley Rebennack, sued the defendants, Dr.[1] and Mrs. Louis P. Le-Blanc, Sr., (the Seniors) for injuries allegedly inflicted on her by their major son, Louis P. LeBlanc, Jr. (Junior). The Seniors moved for a summary judgment, which was granted; and Rebennack appeals. We affirm.
The issue is the legal responsibility of the owners and lessors of immovable property for the torts of their guest or lessee. Rebennack raises several possible theories of recovery: failing to have sufficient security for guests, allowing a guest to remain beyond his wishes and desires, allowing a guest to be beaten and forced to remain on the premises, failing to permit the beaten guest to seek medical treat *210 ment, and failing to act as a reasonable and prudent person.
Rebennack was Junior’s guest at a camp in Grand Isle owned by his parents, the Seniors, on April 20, 1984[2]. Junior’s children, his grandchild, and his parents were also present that day. Rebennack, a married woman, was having an affair with Junior and had been living with him for approximately two weeks prior to this date. She had previously spent occasional nights and weekends with him.
The parties to this litigation and the other guests were boiling seafood, preparing for a family get-together. Rebennack and Junior were drinking during the day. The Seniors left the camp about 5:00 P.M. so that they could arrive home in Golden Meadow before dark.
Rebennack and Junior began quarreling, so Junior’s daughter, son, and grandson left for a short time. Junior struck Reben-nack during the continuation of their quarrel, and the Grand Isle Police Department was called. Rebennack said she wanted to go back to Golden Meadow; and Junior’s daughter, who had returned, offered to drive her there. They started out; however, Rebennack asked to return to Junior so she could check on him.
Rebennack then drove Junior back to Golden Meadow in his car. They went inside the house where he was living and which he rented from his parents. Junior threatened to call Rebennack’s husband as they continued their quarrel. Rebennack pulled out the telephone wires, and Junior responded by hitting her. She ran out of the house and across the street to a hotel, from where she called the Seniors and her attorney. Senior, Junior, and the attorney came over to the hotel. The lawyer suggested that Rebennack could go to the doctor or hospital either at that time or in the morning, but Rebennack chose to cool off during the night rather than seek medical help. She remained at the Seniors’ house, without going to the doctor, until she left for her home in Kenner the following evening.
Rebennack filed suit against Junior; the Seniors; the City of Grand Isle Police Department; Donald Adams, a police officer; and various unnamed insurance companies. Exceptions of Improper Venue, Improper Cumulation of Actions, and No Cause of Action were filed and have been resolved. The police department’s Motion for Summary Judgment was granted but is not before us.
The factual basis for Rebennack’s claims against the Seniors is gleaned from her deposition: She claimed the Seniors knew what their son was like when he drinks and should have taken precautions. She thought Senior knew his son had previously hit another woman, because he said, “You really did it this time” to Junior. She didn’t tell the Seniors she wanted to go home before they left the camp in Grand Isle, but she was sure they knew something was wrong. She said nothing directly to the Seniors, and they had no knowledge that Junior struck her when she and he were still at the camp. Senior knew about the hitting in Golden Meadow because she called him and told him. The Seniors own the house; and, by renting it to Junior, they allowed their son to beat her. Senior didn’t offer her medical treatment, so therefore he didn’t allow it. He didn’t prohibit medical treatment, but he didn’t offer medical help. Senior said that if she wanted to go get medical help that night she could, but he didn’t offer it again the next morning. She figured that Senior didn’t want her to leave. Her attorney advised her that she could go to the doctor in the morning, and Senior just stood there and said nothing. Senior should have made arrangements to bring her where she wanted to go and take care of it. He should have brought her to get medical help. Senior allowed her to stay in his house until the morning. He offered to take her to the hospital that night; but she refused and said she'd rather cool down. She slept at Senior’s house that night.
*211 We hold that these facts are insufficient to support a cause of action against the Seniors and that their Motion for Summary Judgment was properly granted. The Seniors owed no duty, as property owners or lessors, to Rebennack which was breached by any action or inaction on their part. Further, there is no causal connection between any conduct on the part of the Seniors and the harm allegedly suffered by Rebennack.
Property owners and lessors have certain statutory duties and responsibilities in Louisiana. The “master” is liable to passersby for things thrown from his house into the street (L.S.A.-C.C. art. 177); the owner must keep his building in repair so as to prevent its fall onto neighbors and passersby (L.S.A.-C.C. art 660); “custodians” of things can be responsible for damages caused by those things (L.S.A.-C.C. art. 2317); owners of “ruined” buildings are answerable for damages resulting from the ruin (L.S.A.-C.C. art. 2322); lessors must maintain the leased object in an appropriate condition (L.S.A.-C.C. art. 2692); and lessors are liable to lessees for defects in the thing leased (L.S.A.-C.C. art. 2695). None of these duties and responsibilities, however, encompasses the liability urged by Rebennack.
... [T]here is no duty to control the conduct of a third person so as to prevent him from causing physical harm to another unless a special relation exists between the actor and the other which gives the other a right to protection.... Landowners, however, do not stand in such a special relation with those who live upon their premises. This should be clear when it is recalled that under Louisiana law, an owner-lessor owes no legal duty to his lessee to protect him from the tortious acts of third persons who claim no right to the leased premises.... It follows that the landowner/lessor in this case ... owes no duty to his lessee’s guest.... Therefore, under general tort law, Project Square [the owner/lessor] does not share liability with St. Charles Inn [the lessee].
Landry v. St. Charles Inn, Inc., 446 So.2d 1246, 1250 (La.App. 4th Cir.1984). (Emphasis added.)
For the Seniors to be liable to Rebennack in this case, there must be a causal relationship between the harm to Rebennack and the Seniors’ alleged negligent conduct; and Rebennack must show that “but for” the Seniors’ conduct, she would not have suffered injuries. Lear v. United States Fire Ins. Co., 392 So.2d 786 (La.App. 3rd Cir.1980). Citing Levert v. Travelers Indemnity Company, 140 So.2d 811, 813 (La. App. 3rd Cir.1962), the court in Lear continued at p. 789:
The duty of an occupier of premises to an invitee is to exercise reasonable or ordinary care for his safety commensurate with the particular circumstances involved. The occupier thus owes a duty to avoid reasonably foreseeable danger to his invitee and to keep his premises safe from hidden dangers in the nature of traps or pitfalls in that they are not known to the invitee and would not be observed and appreciated by him in the exercise of ordinary care. This includes the duty of reasonable prior discovery of such unobservable dangerous conditions of the premises and correction thereof or a warning to the invitee of the danger. On the other hand, the occupier does not insure an invitee against the possibility of accident. The invitee assumes all normally observable or ordinary risks attendant upon the use of the premises. The occupier is not liable for an injury to an invitee resulting from a danger which is observable or which should have been observed by the invitee in the exercise of reasonable care, or from a danger which the invitee should reasonably have appreciated before exposing himself to it.
That duty was further defined in Walker v. Union Oil Mill, Inc., 369 So.2d 1043, 1047 (La.1979).
In determining a particular defendant’s duty consideration should be given to the nature of the facility and the dangers presented by it. In considering a defendant’s duty to a particular person, consideration should be given to the person’s age, maturity, experience, familiarity *212 with the premises and its dangers, and other such factors which might increase or decrease the risk of harm to that person. The duty would be greater to a person of young age and immature judgment. It would be lesser to a person with experience, knowledge and familiarity with the premises.
Even assuming arguendo that Junior’s alleged propensity to drink and violence was so well known to his parents that they had a duty to protect Rebennack from him, that propensity should have been equally well known to her. Thus, she seems to have assumed the risk of the very harm which she has alleged befell her. It was incumbent on her to leave an alleged place of danger when the opportunity presented itself, but this she failed to do.
We hold that no genuine issue of fact exists and that summary judgment was properly granted. L.S.A.-C.C.P. art. 966. Rebennack must pay all costs of this appeal.
AFFIRMED.

. Dr. LeBlanc is a dentist and not a medical doctor.

. This factual summary was taken from the pleadings in the record, parts of depositions, and the briefs and arguments of counsel.