McDonald, j.
|Jn this appeal, a crime victim challenges a judgment dismissing his civil tort claims against the parents of an adult criminal offender. We affirm the judgment.
FACTUAL AND PROCEDURAL BACKGROUND
In May 2014, 22-year-old Royal Rhodus and 23-year-old Beaux Melancon were arrested for burglary and criminal damage to. property belonging to Garry Lewis. The men allegedly broke into Mr. Lewis’s property, took three vintage Chevrolet Corvette vehicles, raced them, damaged them, hid them at Royal’s residence, and attempted to sell some of the vehicles for parts. After the incident, Mr. Lewis posted flyers in the windows at his business naming the two men, stating the names and addresses of their parents, describing their alleged crimes, and .indicating that they would go to prison and “be the girlfriends of other prison inmates,”
Jerry and Belinda Rhodus, Royal’s parents, filed a petition for injunctive relief against Mr. Lewis seeking removal of the flyers and for monetary damages. ■ Mr. Lewis answered the petition, filed a recori-ventional demand, added Royal as a defendant in reconvention, and sought damages from the Rhoduses.[1] Later, Mr. Lewis added Beaux Melancon and his parents, Danny and Brenda Melancon, as defendants in reconvention. According to Mr. Lewis’s allegations, the Rhoduses and the Melancons failed to properly monitor their sons, both as minors and adults, and knew their sons conducted criminal activity from their homes. Mr. Lewis contended that the parents were liable under LSA-C.C. arts. 2317 and 2318, under equity, or were independently negligent.
Mr. and Mrs. Melancon responded with an exception of no cause of action generally contending that parents are not liable for a major child’s acts. Mr. Lewis opposed the exception arguing the Melan-cons’ liability was not merely vicarious. In his opposition memorandum, he claimed that their son. Beaux, had previously stolen from him in 2009, but that he did not pursue criminal charges then, because Mrs. Melancon had assured his property manager that they would have no further “run ins” with |sBeaux. Mr. Lewis attached the property manager’s affidavit to his opposition memorandum as evidence of Mrs. Melancon’s assurance.
After a hearing, the trial court signed a judgment granting Mr. and Mrs. Melan-cons’ exception and dismissing the matter against them with prejudice. Mr. Lewis appealed the adverse judgment. In a single assignment of error, he claims the trial court erred in dismissing his claims against the Melancons and failing to resolve , all doubts .in favor- of the sufficiency of his petition. He contends his cause of action is based on the Melancons’ assumed duty to prevent Beaux from committing criminal acts against him and is independent of the parental relationship.
PEREMPTORY EXCEPTION OF NO CAUSE OF ACTION
The peremptory exception raising the objection of no cause of action questions whether the law affords the plaintiff any remedy under the allegations of the petition. See White v. State, Dept. *219 of Public Safety and Corrections, Office of Motor Vehicles, 569 So.2d 1001, 1002 (La. App. 1 Cir.1990) (per curiam). If a remedy is provided, the exception must be overruled. Id. Generally, the exception is triable solely on the face of the petition and any attached documents. Id.) see LSA-C.C.P. art. 931. The court must presume all-well pleaded facts are true, must make all reasonable inferences in favor of the non-moving party, and must resolve any doubts in favor of the petition’s sufficiency. See White, 569 So.2d at 1002. The exceptor bears the burden of showing that no cause of action has been stated. City of New Orleans v. Bd. of Com’rs of Orleans Levee Dist., 93-0690 (La.7/5/94), 640 So.2d 237, 253. The appellate court performs a de novo review of a trial court’s, ruling sustaining an exception of no cause ¿faction. Id. Where the grounds of the objection raised by a peremptory exception may be removed by amending the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the 'grounds of the objection raised cannot be so removed, the action shall be dismissed. LSA-C.C.P. art. 934; see In re Interdiction of Coulon, 12-1429 (La.App. 1 Cir. 3/22/13), 116 So.3d 688, 690.
Mr. Lewis relies on his property manager’s affidavit as proof that he has sufficiently pleaded a cause of, action against Mr. and Mrs. Melancon. The affidavit |4appears in the record as an attached exhibit to a memorandum, not as an attached exhibit to Mr. Lewis’s reconven-tional demand; thus, the affidavit is not an “attached document” to Mr. Lewis’s petition against Mr. and Mrs. Melancon, and generally cannot be considered in deciding the exception of no cause of action. See LSA-C.C.P. art. 931. However, we note an exception to this general rule that allows the trial court to consider evidence in ruling on án exception of no cause of action where that evidence is admitted at trial without objection. In such instances, the pleadings are considered to have;been enlarged. Snearl v. Mercer, 99-1738, 99-1739 (La.App. 1 Cir. 2/16/01), 780 So.2d 563, 572, writs denied, 01-1319, 01-1320 (La.6/22/01), 794 So.2d 800, 801; City Nat. Bank of Baton Rouge v. Brown, 599 So.2d 787, 789 (La.App. 1 Cir.), writ denied, 604 So.2d 999 (La.1992). At the hearing on the Melancons’ exception, Mr. Lewis’s attorney referenced the property manager’s affidavit but did not formally offer it into evidence. At the end of the hearing, the trial court orally granted the Melancons’ exception with no mention of the affidavit. Thus, because the affidavit; was not submitted into evidence, we do not consider the pleadings to have been enlarged and decline to consider, the affidavit in our review of the judgment granting the exception. Our de novo review will be limited to the. allegations of Mr. Lewis’s amended reconventional demand.
In his amended reconventional demand, Mr.. Lewis described Royal and Beaux’s alleged criminal activity, and then, as to Mr. and Mrs. Melancon, he specifically alleged:
12. Melancon Parents of Son Melancon were his custodians, giving free lodging and comfort to Son Melancon and conspirator [Royal Rhodus] from which' to operate. They knew of the nature and vice of their Son Melancon, in the Den-ham Springs, .Louisiana, home, who caused damages. Melancon Parents could have reasonably prevented the damage by being present and providing reasonable care, oversight, and/or warnings to neighbors and failed to do so.
[[Image here]]
22. Danny and Brenda Melancon ... are parents of Beaux Melancon ... and *220 have lived with him from birth at 12036 Brown [Road,] Denham Springs, Louisiana.
23. Por a long time, before and through April 2014, Parents Melancon knew Son Melancon was involved in criminal activity using the family home of Parents Melancon as base of criminal actions.
24. Parents Melancon knew or should have known that Son Melancon’s activities from their home, both as an adult and as a minor, constituted a Rrisk of damage and theft to othersf;] therefore, they had a duty to reasonably monitor him or exclude him from said base of activity, their home ... located at 12036 Brown [Road], Denham Springs, Louisiana.
25. Parents Melancon’s actions or inaction as custodians of the home and of occupant Son Melancon as set out above were negligent and caused or contributed to cause damages to Lewis as set out herein.
26. Furthermore, Son Melancon was in Parent [Melancons’] defacto custody having knowledge of his vice and defect, which caused damages to Lewis.[2] With reasonable care Parents Melancon could have prevented the damage by reasonable oversight, or by the withholding of the free lodging, board, and utilities in close proximity to Lewis.
27. The above actions give rise to fault of Parents Melancon under La. C.C. [arts.] 2317, 2318, or under equity. Alternatively, Parents Melancon were negligent and thereby caused or contributed to cause damage to Lewis as set out herein,
PARENTAL LIABILITY FOR ACTS OF THEIR CHILD
Under Louisiana law, there is no duty to protect against or control the actions of a third party that causes physical injury to another unless a special relationship exists that gives rise to such a duty. Blackledge v. Font, 06-1092 (La. App. 1 Cir. 3/23/07) 960 So.2d 99, 103. One such special relationship is that between a parent and minor child, and, generally, a father and a mother are responsible for damage caused by their minor child who lives with them. LSA-C.C. arts. 2317 and 2318. This liability is a legally imposed strict or vicarious liability that arises out of the parents’ right to control their child. See Turner v. Bucher, 308 So.2d 270, 277 (La.1975). Usually, this strict liability ends when a minor child reaches 18 years old, the age of majority, because the parents then no longer have the legal right to control the child. LSA-C.C. arts. 29 and 221 (prior to amendment by 2015 La. Acts No. 260, § 1, eff. January 1, 2016); see MVG v. Lucas, 590 So.2d 1322, 1324-25 (La.App. 1 Cir.1991). When that right of control is lost, parents cannot be held responsible for lack of supervision, because their vicarious liability for their child’s torts is predicated upon the very control and authority the parents no longer have. Shaw v. Hopkins, 338 So.2d 961, 962-63 (La.App. 4 Cir.1976); see also Corley v. Delaney, 629 So.2d 1255, 1258 (La. App. 3 Cir.1993), writs | denied, 94-0481, 94-0636 (La.4/22/94), 637 So.2d 156. Thus, because Beaux was 23 years old and no *221 longer a minor at the time the alleged crimes were committed, we begin by holding that the trial court did not err in dismissing those of Mr. Lewis’s, claims against Mr. and Mrs. Melancon based' on LSA-C.C. arts. 2317 and 2318. We now decide whether Mr. Lewis has otherwise stated a cause of action.
When a child reaches the age of majority, he is assumed to be fully capable of caring for himself. In some cases, however, a parent may retain responsibility for an adult child where that child is unable to care for himself or his affairs, as in the case of interdicts or mentally disabled persons. See LSA-C.C^ art. 389, et seq. But, even when a parent is responsible for a dependent adult child, the parent is not personally responsible for the child’s torts solely by reasons of that relationship. See, e.g., LSÁ-C.C. art. 2319. Rather, to state a cause of action against the parents of an adult tortfeasor, a plaintiff must allege some act of negligence by the parents themselves, i.e., some breach of a duty the parents owe to the plaintiff. Shaw, 338 So.2d at 963; also see LSA-C.C. art. 2319, Revision Comments— 2000, comment (b).
In this case, Mr. Lewis alleges Mr. and Mrs. Melancon were Beaux’s custodians and knew he engaged in criminal activities while living in their home; thus, they had a duty to reasonably monitor him and their failure to do so resulted in Mr. Lewis’s damages. In similar situations, Louisiana courts have been reluctant to find such a duty.
In Corley v. Delaney, 629 So.2d at 1256-57, a shooting victim, shot by a 19-year-old man, sued both the shooter and the shooter’s father, with whom the shooter lived. The Third Circuit reversed the judgment against the. father, finding .that, even though he had overheard an unfriendly telephone conversation between his son and the victim prior to the shooting, there was no legal authority for holding the father liable for his major son’s act. Id. at 1258. Similarly, in Brisco v. Fuller, 623 So.2d 196, 199 (La.App. 2 Cir.1993), a shooting victim sued the parents of an adult shooter with whom the shooter lived, alleging the parents knew of their major son’s dangerous character and had a duty to keep guns away from him. The Second Circuit concluded the victim failed to state a cause of action against the shooter’s parents, noting that 17there were no allegations that the adult child was mentally disabled, emotionally deranged, or that'the parents were his custodians or curators. Id. Here, Mr. Lewis has alleged that Mr. and Mrs. Melancon were Beaux’s custodians, but he has not alleged that Beaux was mentally disabled, emotionally deranged, or otherwise unable to care for. himself or his affairs, so as to expose his parents to liability.[3] But see Dickens v. Auvil, 508 So.2d 638, 639 (La.App. 2 Cir.1987) (which the Brisco court declined to follow) (finding that a shooting victim stated a cause of action against the shooter’s father, .where it was alleged that the father knew his major daughter who lived with him was “emotionally excitable and untrained in the use of firearms.”)
*222 Although they do not specifically indicate that the adult offender lived in the same -house as his parents, we find that MVG v. Lucas, supra; Shaw v. Hopldns, supra; and, Rebennack v. LeBlanc, infra, are also instructive on' the issue of parental liability in this case.
In the MVG case, 590 So.2d at 1324-25, the defendant operated a child care business in her home, where her adult son allegedly molested one of the children for whom his mother cared. The molested child’s father filed suit against the mother, claiming she knew or should have known of her son’s. sexual attraction for young children and failed to properly supervise or control him.. Id. This Court affirmed a summary judgment in favor of the mother’s insurer, finding that tjie mother had no duty or authority to supervise or control her major child because her son’s majority had deprived her of the legal right to control him. Id. at 1325.
Similarly, in the Shaio case, 338 So.2d at 962, an attack victim sued the parents of her attacker, claiming they knew of their adult son’s vicious propensities and failed to take proper action by having him interdicted or committed to an institution. The trial court dismissed'the victim’s petition for failure to state a cause of action. Id. In-affirming the judgment,'the Fourth Circuit stated that there Was no authority under | sLouisiana law for holding parents liable for the actions of their major children.- Id. The court noted that the attacker’s parents- could only be liable if they themselves had breached some duty to the victim, but the court knew of no such duty the attacker’s parents had breached. Id. at 963.
In Rebennack v. LeBlanc, 519 So.2d 209, 210 (La.App. 5 Cir.1988), a female guest at a family gathering sued the parents of the her adult boyfriend with whom she lived, who after drinking during the day, struck her during a quarrel. The Fifth Circuit affirmed summary judgment in favor of the assailant’s parents, finding that, even assuming they knew of their son’s propensity for drinking and violence, the parents had no- duty to protect the girlfriend from him, given that propensity should have been equally well known to her. Id. at 211.
Based on our de novo review, we conclude that Mr. Lewis has failed to state a cause of action against Mr. and Mrs. Melancon under the' facts alleged. We have presumed that the allegations of Mr. Lewis’s amended recbnventional demand are true, and we have made all reasonable inferences in his favor. However, the fact that Beaux, a 23-year-old adult, lives with his parents does not constitute the type of special relationship that would render his parents liable for his actions. See MVG, 590 So.2d at 1325. There áre no allegations that Mr. and Mrs. Melancon are responsible for Beaux' because he was mentally disabled or otherwise unable to care for himself or his affairs. Further, although Mr. and Mrs. Melancon may have been aware that their adult son was involved in criminal activity, we have found no controlling Louisiana authority that imposes a duty ■ on them to monitor him, control his actions, or exclude him from their home.[4]
We have carefully considered whether Mr. Lewis should be given an opportunity to amend his reconventional demand in an effort to state a cause of *223 action. See LSA-C.C.P. art. 934. In his brief, he argues that the Melancons assumed a duty to protect him from further “run ins” with. Beaux based on a conversation his property manager, Rodney Lewis, had with Mrs. Melancon in 2009. First, we note that any assurance Mrs. IflMelancon gave to Rodney Lewis would not bind or create a duty owed by her husband, Mr. Melancon. Further, even if Mrs. Melancon told Rodney Lewis in 2009 that they “would have no other run ins with Beaux,” we would not construe this mere statement as an assumption of a duty to protect Mr. Lewis from criminal acts Beaux would commit in 2014, over six years later. For example, Mr. Lewis does not claim that Mrs. Melancon promised to monitor or restrict Beaux’s behavior in a particular manner or that she promised to be financially responsible for any future damage he might cause to Mr. Lewis.
Thus, based on the allegations of his . reconventional demand, his arguments in opposition to the exception, and his appellate brief, we find the grounds of the exception could not possibly be removed by amending the reconventional demand. Accordingly, we find the trial court properly granted Mr. and Mrs. Melancon’s exception of no cause of action.
CONCLUSION
For the above reasons, we affirm the July 2, 2015 judgment granting Danny and Brenda Melancon’s exception of no cause of action and dismissing Garry Lewis’s claims against them with prejudice. Costs of this appeal are assessed to Garry Lewis.
AFFIRMED.
THERIOT, J., concurs.

. Mr. Lewis also filed a motion to add Brenda G. Lewis, his wife, and Hunter Dexheimer, owner of some of the damaged property, as plaintiffs in reconvention, which the trial court granted. Mr. Lewis is the only party who appealed from the adverse judgment dismissing the matter against Mr. and Mrs. Me-lancon, Thus, on appeal, we only address the dismissal of his reconventional demand:

. This allegation appears to be an attempt to impose a duty on the Melancons under a premises liability theory, where a property owner may be strictly liable for injuries caused by a "vice or defect” in the property. See LSA-C.C. art. 2322. Clearly, Beaux is not his parents’ property and no duty exists under such a theory. See Hackett v. Schmidt, 630 So.2d 1324, 1328-29 (La.App. 4 Cir, 1993), writ denied, 94-0266 (La.4/4/94), 635 So.2d 1123.

. In other relational circumstances, cohabitation with an adult with dangerous tendencies in and of itself did not create a duty to protect against or control the latter's actions. In Hackett, 630 So.2d at 1328-29, the court held ■ that a wife was not liable for her husband’s sexual assault of a child in their home,- even though she knew of his sexual propensities, because the wife owed no duty to the child or the child’s parents. And, in Beck v. Schrum, 41,647 (La.App. 2 Cir. 11/1/06), 942 So.2d 669, 672, a homeowner had no duty to protect against her live-in boyfriend’s accidental shooting of a guest, even though she knew he often “played with” the gun in visitors’ presence.

. For a current comment and survey of cases outside of Louisiana regarding parent liability for a child’s acts, see Palermo, Nicole, Note, "The Fiend Whom I Had Let Loose Among Them": Should Parents be Liable for Their Children's Atrocities?, 47 Conn.L.Rev. 1491 (2015).